## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

DARO C. WEILBURG and
MARIA T. WEILBURG,

                                        Plaintiffs,

                                                    5:22-CV-432
            v.                                      (DNH/ATB)

NICHOLAS JACOBSON, et al.,

                                        Defendants.

DARO C. WEILBURG, Plaintiff, pro se
MARIA T. WEILBURG, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint, together with applications

to proceed in forma pauperis ("IFP"), filed by pro se plaintiffs Daro Weilburg and

Maria Weilburg. (Dkt. Nos. 1, 2, 3, 11, 12).[1]

I.    **IFP Applications**

A review of the plaintiffs' IFP applications show that they declare they are

unable to pay the filing fee. (Dkt. No. 11, 12).  After reviewing their applications, this

court finds that plaintiffs are financially eligible for IFP status.

In addition to determining whether the plaintiffs meet the financial criteria to

---

[1] The plaintiffs filed separate applications for leave to proceed IFP on May 4, 2022.  (Dkt. Nos. 2, 3).  The application submitted by plaintiff Maria Weilburg was not signed.  (Dkt. No. 3).  Moreover, it was unclear from the face of the plaintiffs' applications exactly what amount of social security benefits they were receiving on a monthly basis.  (Dkt. Nos. 2, 3).  This court ordered the plaintiffs to resubmit their applications in order to correct the noted deficiencies.  (Dkt. Nos. 6, 7).  The plaintiffs filed their corrected applications for IFP on May 12, 2022.  (Dkt. Nos. 11, 12).

proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*,

2

550 U.S. at 555).

## II.   **Complaint**[2]

Plaintiffs husband and wife allege that they are "caretakers" for certain property (the "Property") owned by defendant Richard Castellane.  (Complaint ("Compl.") at 5, Dkt. No. 1; Amended Exhibits ("Am. Ex.")[3] at CM/ECF p. 24, Dkt. No. 8).  According to a "verbal contract" entered into on November 24, 2016, defendant Castellane agreed to provide to plaintiff Daro Weilburg "a one-bedroom apartment with all utilities," including free internet access, in exchange for Mr. Weilburg's continued performance of certain grounds maintenance on the property.  (Am. Ex. at CM/ECF p. 24–25).

Liberally construed, the complaint and attached exhibits allege that defendant Castellane and his "property manager," Norm Button,[4] have attempted to evict the plaintiffs from their apartment at the Property because plaintiffs are Jehovah's Witnesses.  Plaintiffs first claim that defendant Castellane "ordered" Mr. Button to flood the septic tank at the Property in January 2022, "in an attempt to force the [plaintiffs] out of the apartment."  (Am. Ex. at CM/ECF p. 2–3).  Plaintiffs maintain that, as a result of the flooding, they had to live with sewage on [the] floors," and backing up into the toilet and two showers.  (*Id.*).  The water damage also exacerbated the existing mold conditions in the Property.  (*Id.*).  Plaintiffs allege that the mold has caused both plaintiffs to become "extremely sick."  (*Id.* at CM/ECF p. 3; Compl. at

---

[2]The complaint was prepared on a generic form for the Southern District of New York.

[3]Plaintiffs filed a set of amended exhibits to the complaint on May 9, 2022.  (Dkt. No. 8).

[4]Mr. Button is not named as a defendant in the complaint.

5–6).

On March 14, 2022, plaintiff Daro Weilburg emailed defendant Nicholas Jacobson, an attorney who apparently represented defendant Castellane, informing Jacobson of the "black mold" and other airborne contaminants in the apartment. (Compl. at 5; Am. Ex. at CM/ECF pp. 2–3). Plaintiffs contend that defendant Jacobson "either did not inform [defendant Castellane]" about the mold problem, or Castellane "refused to remedy the situation." (Compl. at 5). Plaintiff Daro Weilburg sent another email to defendant Jacobson on March 16, 2022, enclosing pictures of the mold in petri dishes and "informing" Jacobson that plaintiffs' "health [was] in jeopardy due to the airborne contaminates." (Compl. at 5; *see also* Am. Ex. at CM/ECF pp. 4–5). Plaintiffs also provided defendant Jacobson with copies of their medical records. (*Id.* at 6).

Plaintiffs then state that defendant Castellane instructed Mr. Button to disconnect their internet service, because Castellane believed the plaintiffs to be "operating . . . a Jehovas Witness Cult Camp [sic]." (Compl. at 7, Am. Ex. at CM/ECF p. 25). Plaintiffs allege that their access to the Property's internet was included as part of their verbal contract with defendant Castellane. (Am. Ex. at CM/ECF pp. 24–25). They further maintain that they require the internet to practice their faith,[5] "have adequate access to the courts," and "have access to food and medicine." (Am. Ex. at CM/ECF p. 23). An exhibit to the complaint makes reference to an email from defendant Castellane, in which Castellane "refers to Mr. Weilburg's religious persuasion of being one of Jehovah's Witnesses as a 'CULT CAMP!'" (*Id.* at CM/ECF p. 25).

---

[5]Plaintiffs maintain that due to the COVID-19 pandemic, the Jehovah's Witnesses met twice a week using a virtual platform, instead of in person. (Compl. at 7, Am. Ex. at CM/ECF p. 25).

In addition to the aforementioned, plaintiffs otherwise assert that defendant Castellane and Mr. Button have "constantly harassed Mr. Weilburg" with "impeding the ingress and egress to his apartment . . . having Mr. Weilburg falsely arrested on claims of criminal trespass in the 2nd degree[6] . . . [and] accusing Mr. Weilburg of operating a Jehovah's witness religious 'cult camp' in [defendant] Castellane's home and using [his] private phone, with many more acts of harassment towards both Mr. and Mrs. Weilburg." (Am. Ex. at CM/ECF p. 3). Defendant Castellane allegedly offered plaintiffs $1,500 in "bribe money" to move out of the Property. (*Id.*).

## DISCUSSION

### III.   Fair Housing Act

Viewing the allegations in the light most favorable to plaintiffs, the court construes the complaint to assert causes of action under the Fair Housing Act of 1968 as amended (the "FHA"), 42 U.S.C. §§ 3601-31. The FHA provides that "it shall be unlawful . . . to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . religion[.]" 42 U.S.C. § 3604(b). Courts in this Circuit have construed Section 3604(b) of the FHA to prohibit the creation of a "hostile environment" by individuals who have control or authority over the "terms, conditions, or privileges of sale or rental of a dwelling." *Favourite v. 55 Halley St., Inc.*, 381 F.

---

[6]The arrest apparently stemmed from a March 12, 2022 incident wherein, while defendant Castellane was in the hospital, plaintiff Daro Weilburg entered his residence to "fix the internet service" and feed defendant Castellane's dog. (Am. Ex. at CM/ECF p. 2). Mr. Weilburg maintains that he had permission to enter the residence. (*Id.*). This incident appears to be the subject of a separate cause of action filed by Mr. Weilburg in the Northern District. *See Weilburg v. Rodgers, et al.*, Dkt. No. 5:22-CV-435 (BKS/TWD).

Supp. 3d 266, 277 (S.D.N.Y. 2019) (citations omitted).  A plaintiff asserting a hostile

housing environment claim pursuant to Section 3604(b) must establish that (1) he was

subjected to harassment that was sufficiently pervasive and severe so as to create a

hostile housing environment, (2) the harassment was because of the plaintiff's

membership in a protected class, and (3) the defendant(s) is responsible for the

allegedly harassing conduct towards the plaintiff. *Id.* (citing *Cain v. Rambert*, No. 13-

CV-5807, 2014 WL 2440596 at \*5 (E.D.N.Y. May 30, 2014) (internal citations

omitted).

The FHA also forbids "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing]

with any person in the exercise or enjoyment of, or on account of his having exercised

or enjoyed, or on account of his having aided or encouraged any other person in the

exercise or enjoyment of, any right granted or protected by section . . . 3604 . . . . " 42

U.S.C. § 3617. A plaintiff bringing a post-acquisition hostile housing environment

claim under § 3617 of the FHA must plead and prove (1) that he was subjected to

harassment that was sufficiently pervasive and severe so as to create a hostile housing

environment; (2) that the harassment was because of the plaintiff's membership in a

protected class; and (3) that a basis exists for imputing the allegedly harassing conduct

to the defendant.  *A.L.M. by & Through Moore v. Bd. of Managers of Vireum*

*Schoolhouse Condo.*, No. 19-2771-CV, 2021 WL 5121137, at \*1 (2d Cir. Nov. 4,

2021); *see also Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 862 (7th

Cir. 2018).

To the extent plaintiffs have named Property owner Richard Castellane as a

defendant in their housing discrimination claim, the court finds that plaintiffs'

submissions are sufficient to order service of the complaint on Castellane, and

recommends the same.  In making this recommendation, the court expresses no opinion

as to whether plaintiffs' claims against defendant Castellane can withstand a properly

filed dispositive motion.

With respect to defendant Nicholas Jacobson, however, the court reaches a

different conclusion.  Although the plaintiffs have pled that they repeatedly informed

defendant Jacobson of the allegedly discriminatory acts taken by defendant Castellane

and/or his agent, Mr. Button, it is generally recognized that "the regulations enumerated

in 42 U.S.C. § 3604 apply to those individuals and entities responsible for building,

selling, and leasing private accommodations."  *3004 Albany Crescent Tenants' Assoc.

v. City of New York*, No. 95 Civ. 10662, 1997 WL 225825, at *4 (S.D.N.Y. May 5,

1997).  Even under the broader language of § 3617,[7] plaintiffs have not sufficiently

alleged that defendant Jacobson interfered with plaintiffs' housing rights or enjoyment,

or attempted to aid another in doing so.  Nor do plaintiffs claim that defendant Jacobson

exercised any control over the Property, or defendant Castellane's conduct with respect

thereto.  Instead, they merely surmise that defendant Jacobson may have told defendant

Castellane about the complaints received from the plaintiffs, but Castellane "refused to

remedy the situation."  (Compl. at 5).

Moreover, even accepting plaintiffs' alternate assumption that defendant

---

[7]*See Puglisi v. Underhill Park Taxpayer Assoc.*, 947 F. Supp. 673, 696 (S.D.N.Y. 1996) (noting that courts have interpreted § 3617 to extend "beyond the activities of housing providers").

7

Jacobson "did not inform" his client of plaintiffs' complaints, the court finds no basis

on which Jacobson would be liable to plaintiffs under the FHA for the consequences of

his purportedly deficient representation of Castellane. *See Holliday as Tr. of LB Litig.*

*Tr. v. Brown Rudnick LLP*, No. 19 Civ. 10925, 2020 WL 4340786, at \*13 (S.D.N.Y.

July 28, 2020) (Recognizing under New York state law that, "absent fraud, collusion,

malicious acts, or other special circumstances, an attorney is not liable to third parties,

not in privity, for harm caused by professional negligence.") (quoting *Moran v. Hurst*,

822 N.Y.S.2d 564, 566 (2d Dep't 2006) (citation omitted)). For the same reasons, there

is no basis to impute defendant Jacobson's alleged conduct onto his employer,

defendant The Law Firm of Bond, Schoeneck & King ("BSK"). Accordingly, the court

recommends the complaint be dismissed as against defendants Jacobson and BSK, for

failure to state a claim.

## IV.   Section 1983

Plaintiffs contend that their First Amendment rights were violated by the

defendants, including their right to religious freedom and "life (health), liberty, and the

pursuit of happiness." (Compl. at 6). The latter is a quote from the United States

Declaration of Independence, and does not by itself provide a basis for plaintiffs'

federal claims.

Plaintiffs have otherwise failed to stated a claim under 42 U.S.C. § 1983 due to

the violation of their First Amendment rights, much less on any other basis. Although §

1983 is the operative vehicle to bring a claim alleging a deprivation of a constitutional

right, a claim for relief under this statute must allege facts showing that the defendant

acted under the color of a state "statute, ordinance, regulation, custom or usage." 42

U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1)

a right secured by the Constitution or laws of the United States was violated, and (2) the

right was violated by a person acting under the color of state law, or a "state actor." *See*

*West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors,

and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399,

406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,

531 U.S. 288, 295 (2001)); see also *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323

(2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not

private parties. . . .") (internal quotation marks and citation omitted).

The defendants named in this case are all private actors.  Plaintiffs have not

alleged any facts suggesting that their actions are otherwise "fairly attributable to the

state."  *See Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y.

June 14, 2019) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d

255, 257 (2d Cir. 2008).  Accordingly, the district court should dismiss plaintiffs'

complaint to the extent it alleges any claims pursuant to § 1983.

## V.    **Remaining Defendants**

Plaintiffs have named several other individuals as defendants in their complaint,

including Robert Altman, business manager for defendant Castellane; Jane Doe

Jacobson, presumably Nicholas Jacobson's wife; and a host of Jane and John Doe

defendants.  (Compl. at 4–5).  These defendants are not mentioned anywhere in the

body of plaintiffs' complaint, and the pleading is entirely devoid of any factual

9

allegations against them.  Thus, not only have the plaintiffs failed to allege these

defendants' personal involvement for purposes of § 1983,[8] but the complaint fails to

meet even the minimal notice pleading requirements of Rule 8(a) of the Federal Rules

of Civil Procedure with respect to them.  Accordingly, dismissal of the complaint is

appropriate as to these defendants.

## VI.    **Opportunity to Amend**

### A.    **Legal Standards**

Generally, before the court dismisses a pro se complaint or any part of the

complaint sua sponte, the court should afford the plaintiff the opportunity to amend at

least once, however, leave to re-plead may be denied where any amendment would be

futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is

present when the problem with plaintiff's causes of action is substantive such that

better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)

(citation omitted).

### B.    **Application**

In this case, although I find that plaintiffs' claims for housing discrimination

based on religion against defendant Richard Castellane may survive initial review, I am

otherwise recommending dismissal of the complaint against the remaining defendants.

Although the court is recommending dismissal against defendants Nicholas Jacobson

and BSK without prejudice, amendment of the pleading would be futile unless the

---

[8]It has long been established that "personal involvement of defendants in alleged
constitutional deprivations is a prerequisite to an award of damages under § 1983." *See Wright v.
Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d
Cir. 1996).

plaintiffs can show that these defendants, by their own conduct, were responsible for any discrimination, harassment, or other interference with plaintiffs' purported rental of the Property, because of plaintiffs' religion. The remainder of the plaintiffs' complaint may be dismissed without prejudice, but without leave to amend.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff Daro Weilburg's motion to proceed IFP (Dkt. Nos. 2, 11) is **GRANTED**,[9] and it is

**ORDERED**, that plaintiff Maria Weilburg's motion to proceed IFP (Dkt. Nos. 3, 12) is **GRANTED**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE AND WITH THE OPPORTUNITY TO AMEND** as against **DEFENDANTS NICHOLAS JACOBSON** and **THE LAW FIRM OF BOND, SCHOENECK & KING,** if plaintiff can show that these defendants were responsible for any discriminatory conduct as described above, and it is

**RECOMMENDED**, that the complaint **BE DISMISSED WITHOUT PREJUDICE BUT WITHOUT THE OPPORTUNITY TO AMEND** against **DEFENDANTS ROBERT ALTMAN, JANE DOE JACOBSON,** and the remaining **JOHN/JANE DOE DEFENDANTS**, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, plaintiffs be given forty-five (45) days to amend their complaint to the extent

---

[9] The court notes that although plaintiffs' applications to proceed IFP have been granted, plaintiffs will still be required to pay fees that they may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

authorized, and that plaintiffs be advised that any amended pleading must be a

**COMPLETE PLEADING, WHICH WILL SUPERCEDE THE ORIGINAL**, and

that plaintiffs must include all the remaining facts and causes of action in the amended

complaint.[10]  **No facts or claims from the original complaint may be incorporated**

**by reference**, and it is

> **RECOMMENDED**, that if the District Court adopts this Recommendation, and

plaintiffs do not elect to amend their complaint, the case be returned to me for any

orders relating to service of the complaint on defendant Castellane, and it is

> **RECOMMENDED**, that if the District Court adopts this recommendation, and

plaintiff files a proposed amended complaint, the proposed amended complaint be

returned to me for review of the amended complaint and any further orders relating to

service on the defendants, and it is

> **ORDERED**, that while plaintiffs may file objections to this Order and Report-

Recommendation, before plaintiffs submit any amended pleading, they should wait for

the District Court to rule on the above Orders and Recommendations.

> Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

---

[10]Any amended pleading or future filings must be signed by both plaintiffs to this action.

12

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:   May 18, 2022

Andrew T. Baxter
U.S. Magistrate Judge

13