# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

DARO C. WEILBURG and
MARIA T. WEILBURG,

                                        Plaintiffs,

        v.
                                                        5:22-CV-432
RICHARD CASTELLANE, et al.,                             (DNH/ATB)

                                        Defendants.

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

The Clerk has sent me what has been filed as the "Third Amended Complaint" in this action. (Dkt. No. 24).  The court assumes familiarity with the substance of my initial review of plaintiff's previous filings in this proceeding, but will provide relevant procedural background and details below.

## I.    Background

The original complaint was filed on May 4, 2022, naming Daro C. Weilburg and Maria T. Weilburg as plaintiffs.  (Dkt. No. 1).  The original defendants were Nicholas Jacobson, Jane Doe Jacobson, Richard Castellane, Robert Altman, The Law Firm of Bond, Schoeneck & King, and various other John/Jane Doe defendants. (*Id*.).  On May 18, 2022, I completed the initial review of plaintiffs' original complaint and issued an Order and Report-Recommendation. ("ORR") (Dkt. No. 13).  The court construed plaintiffs' complaint against the defendants to allege, inter alia, housing discrimination under the Fair Housing Act of 1968 (the "FHA") based on plaintiffs' religion.  In my ORR, I recommended service of the complaint on defendant Castellane based on

plaintiffs' allegations under the FHA. (*Id.* at 5–7). I also recommended dismissal of the complaint as against defendants Nicholas Jacobson and The Law Firm of Bond, Schoeneck & King, without prejudice to plaintiffs amending their complaint to show that these defendants were responsible for any discriminatory conduct relative to the FHA claims. (*Id.* at 7-8, 10-11). Finally, I recommended that the district court dismiss the complaint as to plaintiffs' remaining claims and defendants without prejudice, but without leave to amend. (*Id.* at 8-11).

Plaintiffs objected to the ORR, but on June 7, 2022, the Honorable David N. Hurd adopted my recommendations. (Dkt. Nos. 14, 15). On July 8, 2022, plaintiffs filed an amended complaint in this action. (Dkt. No. 16). On July 13, 2022, while plaintiffs' amended complaint was still pending my review, plaintiffs filed a motion for a temporary restraining order ("TRO") against a myriad of individuals and entities, some of which were the defendants named in plaintiffs' original complaint. (Dkt. No. 17). Judge Hurd denied plaintiffs' motion for a TRO on July 13, 2022, and again upon reconsideration on August 5, 2022. (Dkt. No. 20).

Plaintiff Daro Weilburg then filed what the court labeled a Second Amended Complaint ("SAC") on August 5, 2022. (Dkt. No. 21). The court deemed the SAC to supersede all prior filed complaints, and reviewed the sufficiency of the allegations set forth therein in accordance with 28 U.S.C. § 1915. There were multiple defects in the SAC, as it (1) failed to conform with the specific pleading instructions set out in my May 18, 2022 ORR, (2) did not address any of plaintiffs' FHA claims, and (3) raised a number of issues already being addressed in a separate action filed by Daro Weilburg in this district related to his March 12, 2022 arrest for criminal trespass and subsequent

prosecution in town court. *Weilburg v. Rodgers*, *et al.*, No. 5:22-CV-435 (BKS/TWD). The SAC also omitted Maria T. Weilburg as a named plaintiff.

Based upon these defects, this court recommended dismissal of the SAC pursuant to the prior pending action doctrine, with a final opportunity for plaintiffs to file an amended complaint limited to their original claims under the FHA. (Dkt. No. 22 at 6). Plaintiffs were reminded to include in their amended complaint all of those facts and allegations which this court already determined to plausibly state a claim for housing discrimination against defendant Castellane, as well as any additional facts and allegations by which plaintiff could plausibly show that defendants Jacobson and The Law Firm of Bond, Schoeneck, and King were liable under the FHA for discriminatory conduct relative to plaintiff's housing. (*Id.*) Judge Hurd adopted these recommendations in their entirety in an order dated September 12, 2022, and gave plaintiffs thirty days to file an amended complaint. (Dkt. No. 23).

Plaintiffs complied with Judge Hurd's order by submitting a Third Amended Complaint dated and postmarked October 11, 2022, with a filing date of October 13, 2012. (Dkt. No. 24).

## II. <u>Sufficiency of Third Amended Complaint</u>

The FHA "broadly prohibits discrimination in housing[.]" *Melton v. Malcolm Shabazz, L.P.*, No. 1:18-CV-08111 (SDA), 2021 WL 535661, at *3 (S.D.N.Y. Feb. 12, 2021) (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979)) (alteration in original). Section 3604(b) of the FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race,

color, religion, sex, familial status, or national origin." *Id.* (quoting 42 U.S.C. § 3604

(b)).  Section 3604(b) prohibits not just discrimination in connection with the initial

rental or sale of a dwelling, but also conduct that "'would constitute discrimination in

the enjoyment of residence in a dwelling or in the provision of services associated with

that dwelling after acquisition.'" *Id.* (citing *Ash v. Jacobson*, No. 16-CV-09548 (GHW),

2020 WL 2848178, at *4 (S.D.N.Y. June 1, 2020) (quoting *Francis v. Kings Park*

*Manor, Inc.*, 944 F.3d 370, 377 (2d Cir. 2019)).

 The FHA also permits suits based on discrimination in the provision of property

repairs or maintenance.  *See Rhodes v. Advanced Prop. Mgt.*, Inc., No. 3:10-CV-826

(JCH), 2011 WL 2076497 (D. Conn. May 26, 2011).  Federal regulations interpreting

section 3604 provide that prohibited actions include, among other things, "[f]ailing or

delaying maintenance or repairs of sale or rental dwellings because of race, color,

religion, sex, handicap, familial status, or national origin."  24 C.F.R. § 100.65(b)(2).

 Liberally construed, the Third Amended Complaint alleges that defendant

Richard Castellane owns the basement apartment where plaintiffs reside and

discriminated against plaintiffs based on their religion in violation of the FHA. The

alleged discriminatory acts by defendant Castellane include the flooding of plaintiffs'

apartment, allegedly by individuals acting at the direction of defendant Castellane; the

failure to timely repair related plumbing issues and the associated water damage; the

failure to remediate black mold; the interruption of plaintiffs' access to shared internet

service; impeded ingress and egress; and the attempted eviction of plaintiffs. (Dkt. No.

24, ¶¶ 9-10, 14, 24).  Plaintiffs allege that all these actions were primarily motivated by

defendant Castellane's animosity toward plaintiffs' religious practices, including

4

plaintiff Daro Weilburg's use of the internet to create and publish "Jehovah's Witness faith based videos." (*Id.* at ¶¶ 12, 17, 26).

Having reviewed the Third Amended Complaint, and consistent with my May 18, 2022 ORR, this court finds that plaintiffs' allegations are sufficient to order service of the Third Amended Complaint on defendant Castellane, and recommends the same. Having made such a determination, this court expresses no opinion as to whether plaintiffs' claims against defendant Castellane can survive a properly filed dispositive motion.

Even applying the same liberal construction, plaintiffs still have not stated a cause of action under the FHA against named defendants Nicholas Jacobson and The Law Firm of Bond, Schoeneck, & King.  As the court instructed plaintiffs in my May 18, 2022 ORR, an FHA claim must show that Nicholas Jacobson and The Law Firm of Bond, Schoeneck, & King "by their own conduct, were responsible for any discrimination, harassment, or other interference with plaintiffs' purported rental of the Property, because of plaintiffs' religion." (Dkt. No. 13 at 10-11).  Plaintiff merely alleges that defendant Jacobson was notified of the black mold problem, at a time when plaintiffs were prohibited from directly contacting defendant Castellane. (Dkt. No. 24, ¶¶ 13, 23).  Although plaintiffs characterize defendants Jacobson and The Law Firm of Bond, Schoeneck, & King as "proxy landlords," the allegations in the Third Amended Complaint do not suggest that either defendant had assumed any role other than legal counsel for defendant Castellane.  Therefore, this court recommends dismissal of the Third Amended Complaint with prejudice as against defendants Nicholas Jacobson and The Law Firm of Bond, Schoeneck, & King.

### III.    No Further Opportunity to Amend is Currently Warranted.

Judge Hurd's September 12, 2022 Order granted plaintiffs a final opportunity to amend their original complaint, limited to claims of housing discrimination under the FHA. (Dkt. No. 23).  The Third Amended Complaint includes a number of allegations against Robert Altman[1], Norman and Diane Button, NYS Police Officer Ethan T. Koss, Assistant District Attorney John S. Rodgers and Judge Daniel Vineall, although these individuals are not named as defendants.  As before, these allegations appear duplicative of claims raised by plaintiff Daro Weilburg in *Weilburg v. Rodgers*, *et al.*, No. 5:22-CV-435 (BKS/TWD).  The allegations also appear unrelated to FHA claims. Therefore, to the extent that plaintiffs have attempted to add additional defendants or causes of action unrelated to the FHA in the Third Amended Complaint, I recommend dismissal of these claims without prejudice, but without further leave to amend.

This court also notes that plaintiffs' previous pleadings included a number of exhibits.[2]  (Dkt Nos. 8, 16, 21).  No exhibits were filed as part of the Third Amended Complaint, but the relevant content of some of these previously filed exhibits are summarized therein. (Dkt. No. 24, ¶¶ 12, 17, 26).  The court has reminded plaintiffs on

---

[1] Robert Altman was named as a defendant in plaintiffs' original complaint, but no allegations were made against him in the body of the complaint. (Dkt. No. 1).  The original complaint was dismissed without prejudice as against Mr. Altman, but without leave to amend. (Dkt. No. 13 at 11; Dkt. No. 15 at 3).

[2] Plaintiffs' Third Amended Complaint includes a request for the court to "take the complete record on file and exhibits to make copies of the record and to forward those copies to the appropriate branch of the Department of Homeland Security to be investigated for further violations of the law . . ."  The court has no authority to provide such relief.  *See, e.g. Brooks v. Doe Fund, Inc.* No. 17-CV-3626 (PKC) (LB), 2020 WL 5706451 (E.D.N.Y. September 24, 2020)  ("Generally, the Court's authority to request a criminal investigation—which does not, in any event, extend to ordering one—is limited to conduct that directly affects the judicial process or court proceedings, such as contempt of court.").

multiple occasions that any amended complaint must be a complete pleading that will supersede the prior filed complaints, and no facts or allegations could be incorporated by reference. (Dkt. No. 13 at 11-12; Dkt. No. 22 at 3; Dkt. No. 24 at 4).  Therefore, if the district court adopts my recommendation to order service on defendant Castellane, such service will be limited to the Third Amended Complaint as filed, and will not include any exhibits previously filed as part of superseded pleadings.

WHEREFORE, based on the findings above, it is

RECOMMENDED, that the Third Amended Complaint be **DISMISSED WITH PREJUDICE** as to **DEFENDANTS NICHOLAS JACOBSON and THE LAW FIRM OF BOND, SCHOENECK, & KING**, and it is

RECOMMENDED, that plaintiff's claims against other individuals identified in the Third Amended Complaint but not listed as defendants be **DISMISSED WITHOUT PREJUDICE**, but without the opportunity to amend, and it is

RECOMMENDED, that if the court adopts this recommendation, the complaint be returned to me for any orders relating to service of the Third Amended Complaint on **DEFENDANT RICHARD CASTELLANE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: November 4, 2022

Andrew T. Baxter
U.S. Magistrate Judge

2021 WL 535661
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Myung-Ja MELTON, Plaintiff,

v.

MALCOLM SHABAZZ, L.P. et al., Defendants.

1:18-cv-08111 (SDA)
|
Signed 02/12/2021

**Attorneys and Law Firms**

Jeffrey David Coleman, Kirkland & Ellis LLP, New York, NY, for Plaintiff.

Myung-Ja Melton, New York, NY, pro se.

Lily Anne Ockert, Michael Adam Czolacz, Rebecca June Rosedale, James Anthony Pannone, Morris, Duffy, Alonso & Faley, LLP, New York, NY, for Defendants.

## OPINION AND ORDER

STEWART D. AARON, United States Magistrate Judge:

 *1 Plaintiff Myung-Ja Melton ("Plaintiff" or "Melton") brings this action against Malcolm Shabazz, L.P. ("Malcolm Shabazz") and Covington Realty Services, Inc. ("Covington") (together, "Defendants") alleging violations of the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, et seq. ("FHA"). (Am. Compl., ECF No. 12.) Before the Court is Defendants' motion for summary judgment. (Defs.' Not. of Mot., ECF No. 74.) For the reasons set forth below, Defendants' motion is GRANTED.

## FACTUAL BACKGROUND

Plaintiff, a naturalized United States citizen who was born in South Korea, has resided in Apartment 2C at 104 Lenox Avenue, New York, New York since approximately 2005. (Defs.' 56.1, ECF No. 78, ¶¶ 1, 2, 4.) [1] Plaintiff's apartment building is owned by Malcolm Shabazz and managed by Covington. (Id. ¶ 3.) Sharif Abdul Aziz, whose apartment

is next to Plaintiff's apartment, is the building's longtime Superintendent. (Id. ¶ 5.)

[1]    Plaintiff concedes paragraphs 1, 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, 19, 20, 21 and 25 contained in Defendants' 56.1 Statement. (See Pl.'s Resp. to Defs.' 56.1, ECF No. 86, at 2.)

In early 2015, Plaintiff began experiencing plumbing issues in her apartment, including a problem with her kitchen faucet that caused it to turn on and off by itself. (Defs.' 56.1 ¶ 6.) On or about May 9, 2015, a malfunction with the faucet caused water damage to the store below Plaintiff's apartment. [2] (Defs.' 56.1 ¶¶ 6, 19.) However, Superintendent Aziz told Plaintiff that she was responsible for the flooding because she was the only one living in her apartment who could have let the water run. (Defs.' 56.1 ¶ 9; Pl.'s Resp. to Defs.' 56.1 ¶ 9.) Plaintiff contends that Aziz was "gaslighting" her by making her believe that she had caused the flooding. (Pl.'s Deposition Tr., Pannone Decl. Ex. A, ECF No. 77-1 ("Pl.'s Tr."), at 31:14-32:07; see also Am. Compl. at 8. [3] )

[2]    In October 2017, the store's insurance carrier, Starr Indemnity & Liability Co. ("Starr"), filed a subrogation action against Plaintiff seeking damages of $5,226.00. (Defs.' 56.1 ¶ 19; see also Summons and Complaint, Pannone Decl. Ex. K, ECF No. 77-11.) Plaintiff counterclaimed, seeking four million dollars for intentional inflict of emotional distress and abuse of process. (Defs.' 56.1 ¶ 20; see also Answer with Counterclaims, Pannone Decl. Ex. L, ECF No. 77-12). The court dismissed Plaintiff's counterclaims and Starr voluntarily dismissed its claims against Plaintiff. (Defs.' 56.1 ¶ 21; Decision, Pannone Ex. M, ECF No. 77-13; Stipulation of Dismissal, Pannone Decl. Ex. N, ECF No. 77-14.)

[3]    The Court cites to the ECF pagination of the Amended Complaint and Plaintiff's other filings.

Beginning in January 2016, Plaintiff experienced problems with suds and sewage backing up in her kitchen sink and overflowing, which caused damage to her cabinets and floor as well as the cookware in the cabinet beneath the kitchen sink. (Pl.'s Tr. at 32:15-23; see also Am. Compl. at 7-8.) Superintendent Aziz indicated that he thought the problem was caused by an unauthorized washing machine in another

apartment. [4] (Defs' 56.1 ¶ 7; Pl.'s Resp. to Defs.' 56.1 ¶ 7; *see also* Am. Compl. at 7.)

[4]    According to Defendants, Aziz inspected the four apartments above Plaintiff's apartment and did not find any unauthorized washing machines. (Defs.' 56.1 ¶¶ 8.) Plaintiff disputes that Aziz thoroughly inspected the apartments and argues that Aziz "set up four Afro American male tenants" against her. (Pl.'s Resp. to Defs.' 56.1 ¶ 8.)

**\*2** In or about July 2016, Plaintiff filed an HP action [5] in New York City housing court against Malcolm Shabazz seeking the correction of alleged code violations in her apartment, including raw waste backup in her sink, damage to her floor and cabinets, mold/mildew/bacteria, offensive odor and a defective faucet and heater valve. (Defs.' 56.1 ¶ 11; Tenant's Request For Inspection Request, Pannone Decl. Ex. E, ECF No. 77-5.) The division of Housing Preservation and Development ("HPD") inspected Plaintiff's apartment on August 9, 2016. (Defs.' 56.1 ¶ 12.) HPD found three code violations in Plaintiff's apartment relating to a kitchen cabinet drawer, the kitchen floor and the water shut off valve in the kitchen sink. (*Id.* ¶ 13; *see also* Open Violation Summary Report, Pannone Decl. Ex. F, ECF No. 77-6.)

[5]    An HP action is a proceeding brought by a tenant against a landlord to force the landlord to make repairs and correct building violations. *See* http://www.courts.state.ny.us/courts/nyc/housing/startinghp.shtml (last visited Feb. 12, 2021).

Defendants retained the services of a plumber who, on October 26, 2016, inspected the water system and ran a line through the pipes but could not identify the source of the blockage. (Defs.' 56.1 ¶ 10.) Defendants eventually repaired the floor, cabinets and faucet, although the cabinets were not repaired until December 29, 2018. (Defs.' 56.1 ¶¶ 14-15; Pl.'s Resp. to Defs.' 56.1 ¶¶ 14-15.) The parties dispute whether these delays were caused, at least in part, by Plaintiff limiting access to her apartment. (Defs,' 56.1 ¶¶ 16-18; Pl.'s Resp. to Defs.' 56.1 ¶¶ 16-18.)

**PROCEDURAL HISTORY**

Plaintiff, proceeding *pro se*, commenced this action on September 5, 2018. (Compl., ECF No. 2). District Judge

Stanton, then presiding over this case, entered an Order to Amend on September 26, 2018, informing Plaintiff of the requirements of a claim under the FHA and, pursuant to his authority under 28 U.S.C. § 1915(b)(2)(E), ordering Plaintiff to file an amended complaint. (Order to Amend, ECF No. 7). Plaintiff filed the Amended Complaint on May 25, 2019. (Am. Compl., ECF No. 12). The Amended Complaint names as Defendants Malcolm Shabazz, Covington, Starr and The Norych Group, Inc. ("Norych"), an alleged agent of Starr. (*See id.*) On April 12, 2019, District Judge Torres, to whom the case had been reassigned, entered an Order of Service, directing service on Defendants Malcolm Shabazz and Covington, but dismissing without prejudice Plaintiff's claims against Starr and Norych, all of which Judge Torres found arose under state law. (Order of Service, ECF No. 15.) Malcolm Shabazz filed its Answer on August 15, 2019 and Covington filed its Answer on August 26, 2019. (Malcolm Shabazz Answer, ECF No. 24; Covington Answer, ECF No. 32.) On September 23, 2019, the parties consented to my jurisdiction for all purposes. (Consent, ECF No. 35.)

Following discovery, Defendants filed the instant motion for summary judgment on July 13, 2020. (Notice of Motion, ECF No. 74.) On August 12, 2020, Plaintiff attempted to file her opposition papers by placing them in the Court's drop box. However, the papers appear to have been misplaced and were not filed on the docket. Defendants provided the Court with copies of Plaintiff's opposition papers other than the exhibits to her Declaration, which they had not received, and sought additional time to file a reply. (9/17/20 Letter Motion, ECF No. 80.) On September 30, 2020, the Court held an in-person status conference to address the status of Plaintiff's opposition and Defendants' reply. (9/30/20 Tr., ECF No. 87.)

During the conference, Plaintiff provided copies of the exhibits to her opposition to Defendants' motion and thereafter the Court filed all of Plaintiff's opposition papers on the docket. [6] Plaintiff informed the Court that she had not been provided with a copy of the notice to pro se litigants opposing summary judgment and the Court provided a copy to her. (9/30/20 Tr. at 6-7, 9-10.) Plaintiff also renewed a prior request for additional third-party discovery. (*Id.* at 7-9.) The Court denied Plaintiff's request without prejudice, explaining to Plaintiff that if she believed that she needed additional discovery to oppose Defendant's motion she could state as such in her opposition in accordance with Federal Rule of Civil Procedure 56(d). (*Id.* at 9-11; 9/30/2020 Order, ECF No. 83.) The Court also gave Plaintiff three weeks (later extended to four weeks) to file any additional opposition

papers. (9/30/2020 Order; 10/21/2020 Memo Endorsement, ECF No. 90.) On October 28, 2020, Plaintiff filed a Rule 56(d) Response to Defendants' motion for summary judgment. (Pl.'s 56(d) Resp. ECF No. 92.) Defendants filed a reply memorandum on November 23, 2020. (Reply Mem., ECF No. 93.)

6    The Court notes that, while the document titled Plaintiff's Opposition To Motion For Summary Judgment (ECF No. 85) refers to a memorandum of law, Plaintiff clarified during the conference that she did not file a memorandum of law. (9/30/20 Tr. at 5; *see also* Pl.'s 10/28/2020 Letter, ECF No. 91.)

## LEGAL STANDARDS

### I. Summary Judgment

**\*3** Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23, (1986). If the moving party meets its initial burden, the burden then shifts to the non-moving party to establish a genuine dispute of material fact. *Id.* at 322. "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.' " *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). A dispute concerning material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).

The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 255. Moreover, "[w]here, as here, the party opposing summary judgment is proceeding *pro se*, the court should read his papers 'liberally,' and 'interpret them to raise the strongest arguments that they suggest.' " *Leckie v. Robinson*, No. 17-CV-08727 (PGG) (BCM), 2020 WL 5238602, at \*7 (S.D.N.Y. Feb. 6, 2020) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)), *report and recommendation adopted* 2020 WL 2114846 (S.D.N.Y. May 4, 2020). "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported

by evidence ... are insufficient to overcome a motion for summary judgment." *Parker v. Fantasia*, 425 F.Supp.3d 171, 183 (S.D.N.Y. 2019) (internal citations omitted).

### II. Rule 56(d)

Under Rule 56(d), if a party responding to a summary judgment motions "shows by affidavit or declaration that, for specified reasons, [she] cannot present facts essential to justify [her] opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "Any such affidavit or declaration must describe: (1) what facts are sought and how they are to be obtained, (2) how such facts are reasonably expected to raise a genuine issue of material fact, (3) what efforts the affiant has made to obtain them, and (4) why the affiant's efforts were unsuccessful." *Parker*, 425 F.Supp.3d at 184 (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)); *see also Leckie*, 2020 WL 5238602, at \*7.

### III. The FHA

The FHA "broadly prohibits discrimination in housing[.]" *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Under section 3604(b) of the FHA, it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). "The Second Circuit has held that Section 3604(b) prohibits not just discrimination in connection with the initial rental or sale of a dwelling, but also conduct that 'would constitute discrimination in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling after acquisition.' " *Ash v. Jacobson*, No. 16-CV-09548 (GHW), 2020 WL 2848178, at \*4 (S.D.N.Y. June 1, 2020) (quoting *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 377 (2d Cir. 2019)). Prohibited actions under the FHA include failing to provide or delaying maintenance or repairs because of, *inter alia*, race or national origin. *See Miller v. 270 Empire Realty LLC*, No. 09-CV-02857 (RJD) (RER), 2012 WL 1933798, at \*4 (E.D.N.Y. Apr. 6, 2012) (citing 24 C.F.R. § 100.65(b)(2)), *report and recommendation adopted*, 2012 WL 1940829 (E.D.N.Y. May 29, 2012).

**\*4** "Claims under the FHA may be brought under either a disparate impact or a disparate treatment theory of liability."

2021 WL 535661

*De La Fuente v. Sherry Netherland, Inc.*, No. 17 CIV. 4759 (PAE), 2019 WL 3430207, at *11 (S.D.N.Y. July 30, 2019) (citing *Fair Hous. in Huntingon Comm. v. Town of Huntington*, 316 F.3d 357, 366 (2d Cir. 2003)). The Court analyzes FHA disparate treatment claims under the familiar *McDonnell Douglas* burden-shifting framework. *See id.* (citations omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). "Accordingly, once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision." *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003) (summarizing *McDonnell-Douglas* burden-shifting framework). "If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that discrimination was the real reason for the defendant's action." *Id.* "Summary judgment in defendants' favor 'is appropriate if no reasonable jury could find that the defendant's actions were motivated by discrimination.' " *De La* Fuente, 2019 WL 3430207, at *11 (quoting *McDonnell Douglas*, 411 U.S. at 803).

## DISCUSSION

### I. Statute Of Limitations

Defendants argue that Plaintiff's FHA claims are barred by the statute of limitations. (Defs.' Mem. at 5-6.) A claim under the FHA must be brought within two years "after the occurrence or the termination of an alleged discriminatory housing practice ... whichever occurs last[.]" 42 U.S.C. § 3613(a)(1)(A). "Under federal law, a cause of action generally accrues 'when the plaintiff knows or has reason to know of the injury that is the basis of the action.' " *Stone v. 23rd Chelsea Assocs.*, No. 18-CV-03869 (VSB), 2020 WL 1503671, at *6 (S.D.N.Y. Mar. 30, 2020) (quoting *Nat'l R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 101 (2d Cir. 2015)). "In analyzing the timing of [when a claim accrues] in the context of discrimination claims, the Supreme Court has instructed that 'the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.' " *Id.* (quoting *Bd. of Educ. v. C.M. on behalf of P.G.*, 744 F. App'x 7, 9 (2d Cir. 2018)).

"The statute of limitations for certain discrimination claims, including the FHA, can be effectively extended under the 'continuing violation' theory, whereby the plaintiff claims not just an isolated violation, but an ongoing policy of discrimination which extend into the limitations period." *273*

*Lee Ave. Tenants Ass'n by Sanchez v. Steinmetz*, 330 F. Supp. 3d 778, 791-92 (E.D.N.Y. 2018)(citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)).

"In the housing context, courts have applied the continuing violation theory 'where the type of violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period.' " *Id.* (quoting *Pantoja v. Scott*, 96-CV-08593, 2001 WL 1313358, at *11 (S.D.N.Y. 2001)). "Conversely, courts have held the continuing violation theory does not apply where a plaintiff was on notice of what she believed was discrimination but failed to act in preservation of her rights in spite of her knowledge." *Id.* (internal citation, quotation marks and alterations omitted).

Defendants argue that Plaintiff was "aware of the allegedly defective condition of her sink and cabinets more than two years before" she filed the initial complaint on September 5, 2018, as evidenced by the August 23, 2016 HPD inspection report. (Defs.' Mem. at 5.) However, the relevant inquiry is the time of the alleged discrimination. Plaintiff alleges that Defendants discriminated against her by delaying repairs, including repairs of her cabinets that were not completed until December 29, 2018. Moreover, in opposing Defendants' motion, Plaintiff asserts that she was not aware of the alleged discrimination until November 22, 2016, when she saw other cabinets on the sidewalk and suspected that cabinets of other tenants were being replaced. (Pl.'s 56.1(d) Resp. at 2.) Accordingly, construing the facts in the light most favorable to Plaintiff, the Court will not dismiss Plaintiff's claims on statute of limitations grounds.

### II. Plaintiff's FHA Claims

**\*5** Liberally construing the Amended Complaint, Plaintiff alleges that repairs to her apartment were delayed due to her race and/or national origin. (Am. Compl. at 7-8.) Plaintiff also alleges that Defendants blamed her for the damage to her apartment while protecting the African American and/or Muslim tenants in the apartments above hers, who Plaintiff believes had unauthorized washing machines. (*Id.* at 7; *see also* Pl.'s Resp. to Defs.' 56.1 ¶¶ 7-8.) Finally, Plaintiff alleges that every time the store below her apartment suffered water damage, men came up shouting and kicking her door, and that Aziz and men from the store below her apartment "terrorized her" and Aziz "gaslighted" her by blaming her for the water damage to the store. (Am. Compl. at 8.) I first consider

Plaintiff's claim based on delayed repairs and then consider Plaintiff's remaining allegations. [7]

[7]     In her opposition papers, Plaintiff also suggests other allegedly discriminatory acts, such as that she was denied a lease renewal; that Malcom Shabazz brought eviction proceedings against her in retaliation for filing this lawsuit; and that Aziz, as an employee of Defendants colluded with Starr. (*See* Pl.'s Resp. to Defs.' 56.1 ¶¶ 22-23.) None of these allegations are included in the Amended Complaint. In any event, as with Plaintiff's other claims, she has failed to adduce any evidence of discriminatory intent.

### A. Delayed Repairs

Plaintiff alleges that she was the "sole Asian senior citizen housed by Malcolm Shabazz" and that Defendants remained unresponsive to her repeated requests for repairs. (Am. Compl. at 7.) Plaintiff further alleges that Defendants replaced the cabinets of other tenants who requested repairs. (*Id.*)

"Under § 3604(b), a plaintiff can establish a prima facie case of disparate treatment by making a modest showing that a member of a statutorily protected class was not offered the same terms, conditions or privileges of rental of a dwelling or not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination. *Khodeir v. Sayyed*, No. 15-CV-08763 (DAB), 2016 WL 5817003, at \*5 (S.D.N.Y. Sept. 28, 2016); *see also Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 586 (S.D.N.Y. 2012) ("[C]ourts in this Circuit have articulated the elements of a *prima facie* showing in differing ways depending on the conduct at issue ... [b]ut regardless of how the *prima facie* standard is articulated, the plaintiff is required to show that defendants' action against [her] arose from a discriminatory motive.") (citing cases).

Here, the Court finds that Plaintiff has not adduced evidence from which a reasonable jury could find that Defendants discriminated against her because of her membership in a statutorily protected class. Plaintiff asserts, generally, that other tenants had their cabinets replaced while she did not. (Am. Compl. at 7.) However, Plaintiff has not identified any other tenant who received repairs in a timelier fashion. In her Rule 56(d) Response, Plaintiff provides pictures of cabinets on the sidewalk outside her building, which she contends showed that "cabinet replacement work was going on in the

building." (Pl.'s Rule 56(d) Resp. at 2.) But, as Defendants point out, the fact that other cabinets were placed on the sidewalk in front of Plaintiff's building does not establish that Defendants placed them there or why they were placed there. (Reply Mem. at 3.) Further, even if Plaintiff could establish that Defendants made repairs to other apartments, she would need to present evidence as to when those repairs were requested in order to show that non-Asian tenants were not subject to similar delays. Because Plaintiff has not pointed to any evidence that Defendants were motivated by discrimination in delaying repairs to her apartment, the Court finds that Plaintiff has not established a *prima facie* case of discrimination based on delayed repairs. *See Rhodes v. Advance Prop. Mgmt., Inc.*, No. 10-CV-00825 (JCH), 2012 WL 12904797, at \*7 (D. Conn. Aug. 30, 2012) ("Because [Plaintiff] has not adduced any evidence that suggests that racial animus was a significant factor in the Association's decision not to replace her washer, carpet, or drywall, the court grants summary judgment for the defendants with respect to her FHA claim."), *aff'd sub nom. Rhodes v. Churchill Bridge Ass'n Inc.*, 542 F. App'x 20 (2d Cir. 2013).

### B. Plaintiff's Remaining Claims

**\*6** Plaintiff's remaining claims largely pertain to what she believes was unfair treatment in response to the problems in her apartment. (Am. Compl. at 7-8.) Even if Plaintiff's complaint could be construed as asserting a hostile housing environment claim, [8] she has not presented evidence to suggest that Defendants actions were motivated by discrimination. Plaintiff alleges that Defendants believed other tenants of a different race and/or ethnicity instead of her, but Plaintiff's assertions are based on pure speculation that the other tenants were lying about having washing machines and that Defendants believed them because of their race. Plaintiff also alleges that Aziz and other men terrorized her [9] and that Aziz gaslighted her by blaming her for water damage to the store below her apartment, but she does not cite to any evidence to suggest that these actions were because of her membership in a protected class.

[8]     "A plaintiff asserting a hostile housing environment claim pursuant to Section 3604(b) must establish that (1) she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment, (2) the harassment was because of the plaintiff's membership in a protected class, and (3) the defendant(s) is responsible for the allegedly

harassing conduct towards the plaintiff." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 277 (S.D.N.Y. 2019).

9      The Amended Complaint is not specific on this point. (Am. Compl. at 8.) In her opposition papers, Plaintiff refers to an incident where Aziz allegedly broke into her apartment claiming that he did so alongside a firefighter, though Plaintiff contends that Aziz lied about the firefighter being with him. (*See* Pl.'s Resp. to Defs.' 56.1 ¶ 22; Pl.'s Rule 56(d) Resp. at 3.)

Because, I find, based on the present record, that Plaintiff has not provided sufficient evidence in support of her FHA claim, I now consider Plaintiff's application pursuant to Rule 56(d).

### III. Plaintiff's Rule 56(d) Response

In opposing Defendants' motion for summary judgment, Plaintiff filed, among other opposition papers, a document titled "Plaintiff's Rule 56(d) Response to Defendants' Motion For Summary Judgment." (Pl.'s 56(d) Resp., ECF No. 92.) Plaintiff appears to seek additional discovery in response to the document requests and interrogatory responses that she previously served, particularly with respect to the replacement of cabinets in other apartments in her building and the cause of the water damage to her apartment. (*See id.*)

Both of these issues were the subject of a motion to compel filed by Plaintiff on May 22, 2020. [10] (*See* Endorsed Letter, ECF No. 58.) In response to Plaintiff's motion to compel, Defendants represented that they had produced all documents in their possession responsive to Plaintiff's discovery demands and supplemental discovery demands. (5/28/2020 Letter, ECF No. 59.) With respect to requests by other tenants for replacement of cabinets, Defendants represented that they had no records of any requests other than from Plaintiff. (*Id.* at 2.) In their initial discovery responses, Defendants also produced an invoice and bill of lading from Berkoff Fox for cabinets for another apartment. [11] (Reply Mem. at 2.) Plaintiff's speculation that Defendants have additional documents is insufficient to warrant relief under Rule 56(d). *See Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) ("A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands

of the defendant is insufficient."); *see also In re Dana Corp.*, 574 F.3d 129, 148-49 (2d Cir. 2009) ("A court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative or if the request is based only on speculation as to what potentially could be discovered.").

10     The issue of cabinet replacements also was the subject of Plaintiff's request for a third-party subpoena to Berkoff Fox, which the Court denied without prejudice. (*See* 6/15/20 Order, ECF No. 73; *see also* 9/30/20 Tr. at 14.) For the reasons set forth herein, the Court finds that additional discovery on this topic would not save Plaintiff's claim.

11     As Plaintiff noted during the September 30, 2020 conference, it appears that these records were mistakenly included in Exhibit G to the Pannone Declaration with records of repairs made to Plaintiff's apartment. (*See* 9/30/20 Tr. at 7; Pannone Decl. Ex. G, ECF No. 77-7, at 6-7.) Nonetheless, instead of being an "unwitting disclosure" (*see* Pl.'s Resp. to Defs.' 56.1 ¶ 15) Defendants explained that they produced the documents in response to Plaintiff's discovery requests. (*See* 9/30/20 Tr. at 15; Reply Mem. at 2.)

**\*7** Moreover, Plaintiff had the opportunity to depose Aziz and property manager Bridget Beatty regarding these topics. (*See* Aziz Tr., Pannone Decl. Ex. B, ECF No. 77-2; Beatty Tr., Pannone Decl. Ex. H, ECF No. 77-8.) Notably, Plaintiff was represented by limited-scope pro bono counsel for purposes of depositions. (Notice of Limited App., ECF No. 39.) During depositions, Plaintiff did not ask any questions about the Berkoff Fox documents produced during discovery. (*See generally* Aziz Tr., Beatty Tr.; *see also* Reply Mem. at 2.) Plaintiff also could have sought discovery from other tenants in her building, but either did not do so or did not uncover evidence to support her claims. Finally, Plaintiff has not shown how the additional discovery she seeks would create a genuine issue of fact with respect to discriminatory intent.

For these reasons, the Court finds no basis to deny or defer Defendants' motion to allow Plaintiff to seek additional discovery regarding these issues. Plaintiff has not identified obtainable facts that are reasonably expected to raise a genuine issue of material fact. Accordingly, Plaintiff's application under Rule 56(d) is denied. *See Leckie*, 2020 WL 5238602, at *9 (denying application under Rule 56(d) because, *inter alia*, additional discovery would not raise genuine issue of material fact).

**Melton v. Malcolm Shabazz, L.P., Slip Copy (2021)**

2021 WL 535661

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully requested to mail a copy of this Opinion and Order to the *pro se* Plaintiff and to close this case.

**SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 535661

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Ash v. Jacobson, Not Reported in Fed. Supp. (2020)

2020 WL 2848178

2020 WL 2848178
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Damon ASH, Plaintiff,

v.

Betty JACOBSON and Laura Porschar, Defendants.

1:16-cv-9548-GHW
|
Signed 06/01/2020

**Attorneys and Law Firms**

Damon Ash, Comstock, NY, pro se.

Jeffrey Neil Rejan, Malapero & Prisco LLP, New York, NY, for Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

GREGORY H. WOODS, United States District Judge:

**\*1** Plaintiff Damon Shalel Ash is Jewish. In his submissions to the Court, Mr. Ash has made clear that this identity is very important to him. Because Mr. Ash is African-American, he alleges that many people—including Defendants Betty Jacobson and Laura Porschar (the "remaining Defendants") —have questioned the authenticity of his ethnic and religious identity. For that reason, the Court wants to be clear that it respects Mr. Ash's claim of Jewish ancestry. Mr. Ash says he is Jewish, and the Court has no reason to believe that is untrue.

But this case is not about whether Mr. Ash is Jewish. It is about whether Mr. Ash has stated a plausible claim for relief against the defendants he chose to name in this lawsuit. In a prior opinion, the Court dismissed Mr. Ash's claims but granted Mr. Ash leave to replead claims for religious discrimination and defamation against the remaining Defendants. He did so—and now the remaining Defendants again move to dismiss his claims. The remaining Defendants are not state actors and Mr. Ash's Fair Housing Act claim is barred by the statute of limitations, so the remaining Defendants motion for judgment on the pleadings is GRANTED.

**I. BACKGROUND** [1]

1    The facts in this section are drawn from Mr. Ash's fifth amended complaint ("FAC"), Dkt No. 141, and his opposition ("Opp") to the remaining Defendants' motion for judgment on the pleadings, Dkt No. 156. For this motion, the Court must accept as true the facts alleged in the fifth amended complaint. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Because Mr. Ash is *pro se*, the Court also considers the allegations in his opposition. *See, e.g., Braxton v. Nichols*, No. 08 Civ. 8568 (PGG), 2010 WL 1010001, at \*1 (S.D.N.Y. Mar. 18, 2010). But "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court described the background and procedural history of this lawsuit in its prior opinion. *See Ash v. City of New York (Ash II)*, No. 1:16-cv-9548-GHW, 2020 WL 58240, at \*1-3 (S.D.N.Y. Jan. 6, 2020). [2] In *Ash II*, the Court dismissed as untimely Mr. Ash's claims against former Defendants Lieutenant Leahy, Officer McKenzie, and Sergeant Lee. *Id.* at \*5-6. [3] Mr. Ash did not argue that he was entitled to equitable tolling of the statute of limitations. But the Court granted leave to Mr. Ash to submit an affidavit to provide factual support for an argument that he was entitled to equitable tolling anyway. *Id.* at \*7. That was because Mr. Ash's submissions suggested that he might have suffered from a "medical condition or mental impairment" that was an "extraordinary circumstance" that prevented him from timely filing a complaint in this case." *Id.* The Court likewise granted Mr. Ash leave to leave to replead his religious discrimination and defamation claims against the remaining Defendants. *Id.* at \*10.

2    As described in *Ash II*, this "case was reassigned to this Court's docket because Judge Sullivan was elevated to the Second Circuit." 2020 WL 58240, at \*2. Judge Sullivan issued an opinion on a prior motion to dismiss that provides more background. *See Ash v. City of New York (Ash I)*, 16-cv-9548 (RJS), 2018 WL 3462514 (S.D.N.Y. July 18, 2018).

3    The Court also dismissed Mr. Ash's claims against the City of New York because Mr. Ash inadequately pleaded that he was deprived of his rights because of a municipal "policy or custom."

Ash v. Jacobson, Not Reported in Fed. Supp. (2020)

2020 WL 2848178

*Id.* at \*9; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

**\*2** Mr. Ash submitted two letters in response to the Court's order. Mr. Ash styled the first as a motion for equitable tolling. Dkt No. 140. Mr. Ash styled the second as an amended complaint. Dkt Nos. 140-41. This was Mr. Ash's fifth amended complaint. The Court rejected Mr. Ash's request for equitable tolling because Mr. Ash's submissions were "insufficient to meet his burden to show" that his diagnosis as a manic-depressive "was an extraordinary circumstance justifying the application of equitable tolling in this case." *Ash v. City of New York (Ash III)*, No. 1:16-CV-9548-GHW, 2020 WL 703952, at \*2 (S.D.N.Y. Feb. 12, 2020). The Court thus dismissed Mr. Ash's claims against Officer McKenize, Lieutenant Leahy, Sergeant Lee, and the City of New York with prejudice. *Id.*

The Court construes the fifth amended complaint as Mr. Ash's attempt to replead his defamation and religious discrimination claims against the remaining Defendants. The fifth amended complaint contains a lively, though difficult to follow, narrative including several Biblical quotations and cameos from Queen Elizabeth, Cesare Borgia (spelled as "Ceasar Borje" by Mr. Ash), and Leonardo Da Vinci, among others. *See, e.g.*, FAC at 3, 6. It is unfortunately difficult to tell what Mr. Ash's historical narrative has to do with his claims against the remaining Defendants.

In the portions of his fifth amended complaint that contain allegations relevant here, Mr. Ash alleges that he rented an apartment from an organization called the United Jewish Council ("UJC"). *See* FAC at 2. The UJC allegedly employed the remaining Defendants. *Id.* at 2-6. Mr. Ash alleges that the remaining Defendants and another UJC employee named Craig Pride mistreated him from 2011 through 2016. *Id.* Mr. Ash alleges that UJC employees, including the remaining Defendants, directed racial epithets at him. *Id.* at 8-10. Mr. Ash also attached twenty-five exhibits, captioned "A" through "Y" to his amended complaint. The Court construes Mr. Ash's fifth amended complaint as raising claims for religious discrimination and defamation under 42 U.S.C. § 1983 and a claim for housing discrimination under the Fair Housing Act ("FHA").

The remaining Defendants moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Dkt Nos. 157-59. Mr. Ash opposed that motion, Dkt No. 156, and the remaining Defendants replied to Mr. Ash's opposition. Dkt No. 160. In his opposition, Mr. Ash alleges additional facts to support his religious discrimination and defamation claims. Mr. Ash alleges that Porschar "would cons[is]tently go into [his] place and desecrate [his] relig[i]ous items[.]" Opp. at 2. He also alleges that the remaining defendants "called [him] racial names and refer[red] to [him] as a devil." *Id.* at 3. Mr. Ash alleges that the remaining Defendants' unkind words about him "sp[read] through[ ]out the lower east side and my building like a virus." *Id.* In substance, Mr. Ash alleges in his fifth amended complaint and his opposition that the remaining Defendants derided—and sometimes, actively interfered with—his religious practices and said nasty things about him.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The legal standard for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6). *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 392 (2d Cir. 2008) (noting that the "legal standards of review for motions to dismiss and motions for judgment on the pleadings are indistinguishable" (quotation omitted)).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to meet this pleading standard, a defendant may move to dismiss it for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).

**\*3** Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). A court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).

Case 5:22-cv-00432-DNH-ATB   Document 25   Filed 11/04/22   Page 18 of 37

Ash v. Jacobson, Not Reported in Fed. Supp. (2020)

2020 WL 2848178

But a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

Because Mr. Ash is proceeding *pro se*, the Court must liberally construe his allegations and "interpret[ ] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed[.]" (quotation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where ... the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." (quotation omitted)). Courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss. *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). Even so, "dismissal of a *pro se* complaint is ... appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

On a motion to dismiss or a motion for judgment on the pleadings, a court may ordinarily "consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). But "allegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss." *Braxton v. Nichols*, No. 08 Civ. 8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010); *see also Rosado v. Herard*, No. 12 Civ. 8943 (PGG)(FM), 2013 WL 6170631, at *3 (S.D.N.Y. Nov. 25, 2013) (citation omitted). The Court has thus considered the allegations in Mr. Ash's opposition to this motion for judgment on the pleadings. Yet "[w]here a plaintiff's motion papers assert entirely new claims that do not arise out of the facts alleged in the complaint, the court need not consider them." *Vlad-Berindan v. MTA N.Y.C. Transit*, 14-CV-675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (Sullivan, J.) (citing *Bernstein v. City of New York*, No. 06 Civ. 895 (RMB), 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007)).

## III. DISCUSSION

### A. Section 1983 Claims

The Court grants the remaining Defendants' motion for judgment on the pleadings as to Mr. Ash's claims under 42 U.S.C. § 1983 because Mr. Ash has failed to plausibly allege that the remaining Defendants acted under color of state law. "Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Ash II*, 2020 WL 58240, at *5 (citing 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015) (quotation marks omitted); *see also United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("[A] litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' ").

**\*4** Mr. Ash has not adequately alleged that the remaining Defendants were state actors. There is no allegation in Mr. Ash's fifth amended complaint or in his opposition that would permit the Court to draw a plausible inference that the remaining Defendants acted under color of state law. Mr. Ash alleges only that the remaining Defendants were employed by the United Jewish Council and does not allege that this organization is affiliated with the City or the State of New York.

Nor has Mr. Ash plausibly pleaded a conspiracy between the remaining defendants and any state actors. "The pleading of a conspiracy will enable a plaintiff to bring [a section 1983] suit against purely private individuals[.]" *Porat v. Lincoln Towers Comty. Ass'n*, No. 04 Civ. 3199 (LAP), 2005 WL 646093, at *7 (S.D.N.Y. Mar. 21, 2005) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). "To state a § 1983 conspiracy claim, a plaintiff must allege: '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.' " *DeMartino v. N.Y. State Dep't of Labor*, 167 F. Supp. 3d 342, 373 (E.D.N.Y. 2016) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Mr. Ash's allegations do not permit a plausible inference that the remaining Defendants consummated an agreement, even implicitly, with any state actors, so he cannot circumvent the state action requirement through a section 1983 conspiracy. The remaining Defendants are entitled to judgment on the pleadings on Mr. Ash's section 1983 claims.

Ash v. Jacobson, Not Reported in Fed. Supp. (2020)

2020 WL 2848178

**B. FHA Claim**

Mr. Ash's Fair Housing Act claim is time barred. Because Mr. Ash alleges pervasive discrimination by his landlords, the Court has construed his fifth amended complaint as raising a claim for housing discrimination under the FHA. "The FHA, enacted as Title VIII of the Civil Rights Act of 1968, imposes liability on private actors who discriminate against protected class members in the real estate market." *Stone v. 23rd Chelsea Assocs.*, No. 18-CV-3869 (VSB), 2020 WL 1503671, at *5 (S.D.N.Y. Mar. 30, 2020) (quotation omitted). "Under section 3604(b) of the FHA, it is unlawful to 'discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.' " *Id.* (quoting 42 U.S.C. § 3604(b)). "The Second Circuit has held that Section 3604(b) prohibits not just discrimination in connection with the initial rental or sale of a dwelling, but also conduct that 'would constitute discrimination in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling after acquisition.' " *Id.* (quoting *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 377 (2d Cir. 2019)). Mr. Ash's fifth amended complaint could be read to raise a claim that he was discriminated against in the enjoyment of his residence in violation of the FHA.

But Mr. Ash's FHA claim is not timely. "A claim under the Fair Housing Act must be brought within two years 'after the occurrence or the termination of an alleged discriminatory housing practice.' " *Id.* at *6 (quoting 42 U.S.C. § 3613(a)(1)(a)). "Under federal law, a cause of action generally accrues 'when the plaintiff knows or has reason to know of the injury that is the basis of the action.' " *Id.* (quoting *Nat'l R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 101 (2d Cir. 2015)). "In analyzing the timing of when a claim accrues in the context of discrimination claims, the Supreme Court has instructed that 'the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.' " *Id.* (quoting *Bd. of Educ. v. C.M. on behalf of P.G.*, 744 F. App'x 7, 9 (2d Cir. 2018)); *see also Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992). "The time to file suit may also be tolled by the continuing violation doctrine, which applies when a plaintiff challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period." *Stone*, 2020 WL 1503671, at *6 (quotation omitted). When it applies, this "doctrine delays the commencement of the statute of limitations period until the last discriminatory

act in furtherance of the alleged discriminatory policy." *Id.* (quotation and ellipsis omitted); *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). But tolling "is disfavored in this Circuit, and will be applied only upon a showing of compelling circumstances." *Stone*, 2020 WL 1503671, at *6 (quotation omitted). "Although the statute of limitations is an affirmative defense, it 'may be raised by a ... motion to dismiss under Rule 12(b)(6) [or Rule 12(c)], without resort to summary judgment procedure, if the defense appears on the face of the complaint.' " *Ash II*, 2020 WL 58240, at *5 (quotation omitted); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

***5** Mr. Ash's complaint and opposition allege that the remaining Defendants discriminated against him until July 2016. *See, e.g.*, Opp. at 2 ("Norma Klein [4] was very blunt as to me not practicing in here building [sic] through the years of 2012 to July of 2016.... Ms. Jacobson also let me know that on more than several occasions throug[h]out the years of 2012 to [J]uly of 2016, that she didn[']t like me practicing or worshiping in the building[.]"). The statute of limitations defense to the FHA claim the Court has construed the fifth amended complaint to raise is apparent on the face of the complaint. Even under the continuing violation doctrine, the latest that the statute of limitations on Mr. Ash's FHA claim began to run was July 31, 2016. "Mr. Ash did not name Defendants Porschar, Jacobson, and Klein ... until he filed [his third amended complaint] on December 21, 2018," at least four months after the statute of limitations expired. *Ash II*, 2020 WL 58240, at *6.

4         Mr. Ash alleged that Norma Klein was employed by the UJC and named her as a defendant, but Ms. Klein died. *See* Dkt No. 106 (statement noting death of Norma Klein under Federal Rule of Civil Procedure 25(a)).

Mr. Ash is not entitled to the benefit of the relation back doctrine. An otherwise untimely claim should not be dismissed if "it 'relates back' to one of the pleadings filed before the statute of limitations expired." *Neal v. Wilson*, 239 F. Supp. 3d 755, 759 (S.D.N.Y. 2017) (citing Fed. R. Civ. P. 15(c)). Mr. Ash first filed this action on December 9, 2016. Dkt No. 1. But he did not name the remaining Defendants until December 21, 2018. "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995); *see*

Ash v. Jacobson, Not Reported in Fed. Supp. (2020)

2020 WL 2848178

*also Schiavone v. Fortune*, 477 U.S. 21, 31 (1986) (observing that the "linchpin" of the relation back doctrine "is notice" to the putative defendants "and notice within the limitations period"); *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) ("Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known ... not what the plaintiff knew or should have known at the time of filing her original complaint.").

Contrary to Mr. Ash's arguments, the fact that he filed an action in state court against these or similar defendants does not entitle him to the benefit of the relation back doctrine. That the defendants may have had notice of some other action does not mean that they had notice of this action. And that is what matters for the relation back doctrine. Mr. Ash's FHA claim is thus barred by the statute of limitations. [5]

[5]     The Court's prior conclusion that Mr. Ash is not entitled to equitable tolling also applies to his FHA claim. *Ash III*, 2020 WL 703952, at *1-2. There are no additional allegations in the most recent iteration of Mr. Ash's complaint to alter the Court's conclusion that he has not met his burden to show "rare and exceptional circumstances" that warrant equitable tolling. *Id.* at *1 (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)).

**C. Supplemental Jurisdiction**

The Court declines to exercise supplemental jurisdiction over Mr. Ash's state-law defamation claims and any other state-law claims that Mr. Ash's fifth amended complaint could be read to raise. Although Mr. Ash did not assert any specific state law causes of action in his fifth amended complaint, the Court must construe Mr. Ash's complaint "liberally to raise the strongest claims it suggests." *Nielsen*, 746 F.3d at 63 (quotation omitted). Mr. Ash's complaint states a New York state-law cause of action for defamation. After this motion was fully briefed, Mr. Ash sent a letter to the Court, Dkt No. 161, pointing the Court to *Bernstein v. Seeman*, 593 F. Supp. 2d 630 (S.D.N.Y. 2009). That case states the elements of defamation under New York law. *See id.* at 635 ("To state a claim for defamation, a plaintiff must allege: (1) a false statement, (2) published without privilege or authorization to a third party, (3) constituting fault as judged by, at a minimum, a negligence standard, and (4) causing special harm or constituting defamation per se.") (citing *Salvatore v. Kumar*, 845 N.Y.S.2d 384, 388 (2d Dep't 2007)). But the

Court declines to exercise supplemental jurisdiction over this and any other of Mr. Ash's state-law claims.

**\*6** When a district court has original jurisdiction over claims in a case, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy under Article III." *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) (quoting 28 U.S.C. § 1367(a)); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction ... exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' " (quoting U.S. Const. art. III, § 2)). Claims are " 'part of the same case or controversy' if they 'derive from a common nucleus of operative fact.' " *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)). Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, subsection (3) applies because the Court has dismissed all the claims over which it had original

Case 5:22-cv-00432-DNH-ATB  Document 25  Filed 11/04/22  Page 21 of 37

Ash v. Jacobson, Not Reported in Fed. Supp. (2020)
2020 WL 2848178

jurisdiction. Thus, the Court may exercise its discretion to decline supplemental jurisdiction over any remaining state law claims.

Even "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citation omitted). Both the Second Circuit and the Supreme Court have "held that when the federal claims are dismissed the 'state claims should be dismissed as well.' " *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Gibbs*, 383 U.S. at 726). "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims.' " *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (" '[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.' " (quotation omitted)). This is the usual case: The Court has evaluated the values set forth in *Gibbs* in the context of this case and has concluded that they support the Court's decision to decline supplemental jurisdiction.

**\*7** Thus, because the Court has dismissed all of Mr. Ash's claims based on a federal question under 28 U.S.C. § 1331 and there is no other basis for federal jurisdiction over this case, the Court declines to exercise supplemental jurisdiction over Mr. Ash's New York state-law defamation claim and any other state-law claims that the fifth amended complaint can be construed to assert. *See* 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

The remaining Defendants motion for judgment on the pleadings is GRANTED. The Court denies Mr. Ash leave to replead his claims. The Court is mindful of the Second Circuit's instruction that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings[.]" *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). But "[w]here it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 62 (2d Cir. 2016) (quotation omitted). Mr. Ash has amended his complaint five times. He has had ample opportunity to state a plausible claim for relief. "[W]here pleading deficiencies have been identified a number of times and not cured, there comes a point where enough is enough." *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003) (citations omitted). We have reached that point in this case.

The Court requests that counsel for the remaining Defendant mail a copy of this order to Mr. Ash and provide Mr. Ash with copies of any unpublished cases cited in this decision under Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2. Counsel for the remaining Defendants is directed to file proof of the mailing of these documents on the docket of this case no later than June 10, 2020.

The Clerk of Court is directed to enter judgment for Defendants, to terminate all pending motions, and to close this case.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2020 WL 2848178

---

  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.  6

2011 WL 2076497
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Eva M. RHODES, Plaintiff,

v.

ADVANCED PROPERTY MANAGEMENT INC.,
and Churchill Bridge Association, Inc., Defendants.

Civil No. 3:10–cv–826 (JCH).
|
May 26, 2011.

**Attorneys and Law Firms**

Eva M. Rhodes, Newington, CT, pro se.

Thomas E. Brennan, Thomas P. Lambert, Halloran & Sage,
Westport, CT, for Defendants.

**RULING RE: PLAINTIFF'S MOTIONS TO
AMEND (DOC. NOS. 36 & 37) AND DEFENDANTS'
SECOND MOTION TO DISMISS (DOC. NO. 43)**

JANET C. HALL, District Judge.

**I. INTRODUCTION**

**\*1** Plaintiff, Eva M. Rhodes, filed a *pro se* Complaint
alleging, *inter alia,* that her condominium unit was among
three units damaged by sewage back-ups. Complaint at 7–
8. Rhodes claims that the defendants—her condominium
association and their property management company—
collected insurance money in connection with the damage,
but failed to use the proceeds to offset or repair the damages
to her condominium. *Id.* Rhodes alleges that the defendants
replaced the drywall in one of the other damaged units and
provided a check to the owner of the other affected unit. *Id.* at
7, 8. Rhodes is of African–American descent, and she claims
that the owners of the other two units are Caucasian. *Id.* at 7, 8.

Additionally, Rhodes alleges that defendants displayed
discriminatory and "racially intolerant" attitudes toward her
on two occasions: at a board meeting for the condominium
association, and when the property manager visited her
condominium to assess the damage. *Id.* at 8. Rhodes also
claims that the defendants approached her mortgage lender
for payment of condominium association fees, thereby
damaging her relationship with her mortgage lender and

prompting the lender to foreclose. Complaint at 8–9. Using
a form complaint, Rhodes placed a checkmark on a line
indicating that she was alleging jurisdiction pursuant to "42
U.S.C. § 1983 (applies to state defendants)." Complaint at 2.
The Complaint makes no other express reference to specific,
formal causes of action.

Defendants filed a first Motion to Dismiss, arguing that the
Complaint failed to state a claim under section 1983. *See*
Doc. No. 19. Rhodes then filed two Motions to Amend
her Complaint seeking, first, to "amend the jurisdiction to
include: 42 USC 1982, 42 USC Chapter 21, 42 USC 3604
and 42 USC 1981," Doc. No. 36, and, second, to "amend the
jurisdiction to also include 42 USC 1983, Civil Rights 1968
and the Civil Rights Act of 1866," Doc. No. 37. Defendants
responded with a Second Motion to Dismiss, taking account
of the statutory provisions referred to in the Motions to
Amend. Doc. No. 43. Defendants argue that the complaint
fails to state a claim under these statutory provisions. [1] *See
id.* In the alternative, defendants' Memorandum includes a
request for a more definite statement. Doc. No. 43–1 at 15–
18. Defendants then filed an Objection to the two Motions
to Amend "on the grounds that the amendment would be
futile and that the motion seeks not to remedy a technical
defect in her original jurisdictional allegations, but rather to
create entirely new jurisdictional grounds." Doc. No. 44 at 1.
While this action was still pending before another judge of
this court, the court denied defendants' first Motion to Dismiss
as moot in light of the Motions to Amend the Complaint
and in light of the Second Motion to Dismiss. *See* Order
(Doc. No. 51). However, the court did not take any action on
the pending Motions to Amend. For the following reasons,
Rhodes' Motions to Amend are now granted, and defendants'
Motion to Dismiss is granted in part, and denied in part.

[1]     With respect to some of the claims, defendants
        also argue for dismissal for lack of subject matter
        jurisdiction and for failure to add a necessary party.
        *See* Def. Mem. at 6–7, 14–15 Because the court
        finds that each of those particular claims are more
        appropriately dismissed for failure to state a claim,
        the court declines to address those arguments.

**II. LEGAL STANDARD**

**\*2** Upon a motion to dismiss pursuant to Rule 12(b)(6),
the court must determine whether the plaintiff has stated a
legally-cognizable claim by making allegations that, if true,
would show she is entitled to relief. *See Bell Atlantic Corp. v.
Twombly,* 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)

(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief' "). The court takes the factual allegations of the complaint to be true, *Hemi Group, LLC v.. City of New York,* 130 S.Ct. 983, 986–87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir.2009).

"A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. at 1949 (2009) (quoting *Twombly,* 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. *Boykin v. KeyCorp,* 521 F.3d 202, 213 (2d Cir.2008). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible." Boykin,* 521 F.3d at 213 (citation omitted); *accord Arista Records,* 604 F.3d at 120.

Applying this standard to a *pro se* complaint, the court must bear in mind that a "document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). "[E]ven after *Twombly,* dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin,* 521 F.3d at 216. Where a *pro se* complaint must be dismissed due to a pleading deficiency, the court should generally provide leave to amend. *Watts v. Services for the Underserved,* 309 F. App'x 533, 535 (2d Cir.2009) ("[W]here the ground for dismissal is quite narrow and the plaintiff appears *pro se,* it was error to enter judgment ... rather than permitting plaintiff at least one chance to cure a pleading defect."); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [*pro se* ] complaint gives any indication that a valid claim might be stated.").

## III. DISCUSSION

### A. Plaintiff's Motions to Amend

**\*3** Given the liberal standards for construing and permitting amendment of pro se pleadings, it would be inappropriate to deny Rhodes' Motions to Amend on the supposed ground that they seek "not to remedy a technical defect in her original jurisdictional allegations, but rather to create entirely new jurisdictional grounds." Def. Obj. at 1. Defendants' characterization of the amendments is not a fair one. The proposed amendments are minor. They do not change the substance of the Complaint. They merely provide reference to certain federal civil rights statutes. To the extent that these statutory references fit the factual allegations of the Complaint, they provide helpful clarification of the basis for Rhodes' claims. To the extent they do not, defendants' previously filed Second Motion to Dismiss is sufficient to address that problem. [2]

[2] Tellingly, defendant's alternate argument that the Motions to Amend should be denied on grounds of futility is based entirely on a reference to their Second Motion to Dismiss. Def. Obj. at 6–7.

Having filed a Second Motion to Dismiss that takes account of each of the proposed amendments, it is not at all clear why defendants have filed a separate Objection to the amendments. Under the circumstances, the implication of defendants' separate opposition is that Rhodes' Complaint should be narrowly read as limited to section 1983 because, acting without the benefit of counsel, she checked a box on a form complaint stating that she was invoking 42 U.S.C. § 1983. [3] That position is untenable. The Motions to Amend are granted, and the Second Motion to Dismiss the Complaint is considered in light of the proposed amendments.

[3] The only other option expressly provided by the form was that jurisdiction was invoked pursuant to "*Bivens,* ... (applies to federal defendants)." Complaint at 2. In a separate section, the form provided a blank space to list any additional bases for jurisdiction. *Id.* Thus, it is possible that Rhodes selected the section 1983 line because it appeared to be the better of the two options presented on the form.

### B. Defendant's Second Motion to Dismiss

### 1. Fair Housing Act Claim

On any fair reading, the Complaint indicates that Rhodes intends to state a claim based upon racial discrimination with regard to the provision of repairs or compensation for damages to her condominium. Even without amendment, such allegations could be deemed sufficient to indicate that Rhodes is asserting a claim under the Fair Housing Act (FHA), 42 U.S.C. §§ 3601, *et seq.,* which prohibits, among other things:

> discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or *in the provision of services or facilities in connection therewith,* because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b) (emphasis added). Rhodes' first Motion to Amend expressly refers to 42 U.S.C. § 3604, and her second Motion to Amend expressly refers to the Civil Rights Act of 1968, of which the FHA is a part.

The FHA permits suits against condominium boards and property managers. "[C]ourts have held that (1) owners; (2) their agents; (3) condominium board members; (4) neighbors; (5) municipalities; (6) public officials; (7) housing vendors; (8) and even arsonists could be liable under the FHA." *Fair Housing Justice Center v. Broadway Crescent Realty, Inc.,* 10–cv–34 (CM), 2011 WL 856095, at *4 (S.D.N.Y. March 9, 2011) (citations omitted). In *Schroeder v. DeBartolo,* 879 F.Supp. 173 (D.P.R.1995), a district court denied a motion to dismiss an FHA claim against condominium board members for interfering with the plaintiff's use of common areas in a condominium building. The court explained: "although defendants were not decedent's direct housing provider, they were in a position ... to discriminate against plaintiff in the provision of housing services or facilities." *Id.* at 178.

*\*4* The FHA also permits suits based on discrimination in the provision of repairs or maintenance. Federal regulations interpreting section 3604 provide that prohibited actions include, among other things, "[f]ailing or delaying maintenance or repairs of sale or rental dwellings because of race, color, religion, sex, handicap, familial status, or national origin." 24 C.F.R. § 100.65(b)(2); *see also Committee Concerning Community Improvement v. Modesto,* 583 F.3d 690, 711 (9th Cir.2009).

The allegations of the Complaint are sufficient to state a claim under the FHA. The Complaint indicates that the condominium association maintains insurance with respect to the property at issue. *See* Complaint at 7, 8 (alleging that Advanced Property Management "had received Insurance Claims money on behalf of the sewage back up claim in my home"). Whatever the purpose or limitations of that insurance, the Complaint also alleges that defendants have, in fact, repaired or compensated for damages to Caucasian condominium owners, but not for related damages to Rhodes, an African–American condominium owner. *Id.* A condominium association and property management company that provides repairs or compensation for damage to individual condominium units is "in a position ... to discriminate against plaintiff in the provision of housing services or facilities." *Schroeder,* 879 F.Supp. at 178; *see also* 24 C.F.R. § 100.65(b)(2). Rhodes alleges that they have done so here.

Defendants argue that the Complaint fails to state a claim because they find Rhodes' allegations of racial discrimination to be conclusory. In *Boykin v. KeyCorp,* the Second Circuit reversed the dismissal of a *pro se* plaintiff's FHA complaint for failure to adequately plead racial discrimination. 521 F.3d 202 (2d Cir.2008). The Second Circuit emphasized that, even after *Twombly,* the "complainant 'need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Id.* at 214 (quoting *Erickson,* 551 U.S. at 93 (quoting *Bell Atlantic Co. v. Twombly,* 550 U.S. 544, 555 (2008))). The Second Circuit held that the plaintiff was not required to plead "racial animus" or to plead facts sufficient to support a *prima case* of discrimination:

> [I]t is sufficient that Boykin's complaint states that she "is an African American female," describes KeyBank's actions with respect to her loan application and alleges that she "was treated differently from similarly situated loan applicants ... because of her race, sex, and the location of the property in a predominantly African–American neighborhood."

*Boykin,* 521 F.3d at 215. Here, the Complaint alleges that plaintiff is African–American; that, after an incident causing damage to three condominium units, defendants provided compensation or repairs to two Caucasian owners, but not to plaintiff; and that their reason for doing so was plaintiff's race. The Complaint also alleges that defendants exhibited

racial bias and spoke to her racially intolerant manner at a board meeting for her condominium association and when the property manager visited her condominium to assess the damage. This is sufficient to survive a motion to dismiss. *See Boykin,* 521 F.3d at 215.[4]

[4]     Defendants quote *Sanders v. Grenadier Realty, Inc.,* 367 F. App'x 173, 175 (2d Cir.2010), for the proposition that Rhodes must plead "facts supporting an inference of racial animus" in connection with her FHA claim. Def. Mem. at 14. The quotation does not appear in the portion of the *Sanders* opinion that addresses an FHA claim. In upholding dismissal of the FHA claim, the Second Circuit relied upon the fact that the plaintiffs there, who were represented by counsel, had not adequately pled that they were entitled to the rent subsidies at issue and had failed to allege what the "defendants did or did not do to deny them subsidies." *Id.* at 176. Here, plaintiff has plainly alleged what defendants did and did not do: defendants are alleged to have provided remediation or repairs to affected condominium owners who were white, and not provided similar remediation to plaintiff who is African–American.

**\*5** Defendants also argue that the other affected condominium owners were not, in fact, similarly situated because the damage to their condominiums was more extensive. Def. Mem. at 10, 14. Defendants also argue that their insurance policy is intended to "secure the Association from damage to the common elements [of the condominiums] for which they are responsible." Def. Mem. at 10. These are issues going to the merits of Rhodes' claim, and they should be addressed at summary judgment or at trial. *See Boykin,* 521 F.3d at 216 ("The merits of a claim like Boykin's, which on its face presents a plausible allegation of disparate treatment, should be tested on summary judgment."). At this stage, these arguments merely confirm that defendants have notice of the basis for Rhodes' FHA claim. Therefore, dismissal of Rhodes' FHA claim for failure to state a claim would be inappropriate.[5]

[5]     Defendants' Motion contains an argument that plaintiff has failed to exhaust state administrative remedies. *See* Def. Mem. at 7–8, 14–15. Although the argument is not expressly directed at plaintiff's FHA claim, the court notes that there is no exhaustion requirement for an FHA suit. *See* 42

U.S.C. § 3613(a)(1)(B)(2); *Huntington Branch, N.A.A.C.P. v. Town of Huntington,* 689 F.2d 391, 393–94 n. 3 (2d Cir.1982) ("Congress gave explicit consideration to the availability of local remedies and the lack of an exhaustion requirement in Section 812 [*i.e.,* 42 U.S.C. § 3612] strongly suggests that such a requirement was not intended.").

## 2. Section 1983 Claim

Both the Complaint and the Motions to Amend indicate that Rhodes seeks to assert a claim pursuant to 42 U.S.C. § 1983. "42 U.S.C. § 1983 applies to a private party's actions only if the actions are fairly attributable to the state." *Bernas v. Cablevision Systems Corp.,* 215 F. App'x 64, 68 (2d Cir.2007); *see* 42 U.S.C. § 1983 (authorizing claims against persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State."). The Complaint provides no indication that the defendants are state actors. Therefore, defendants' Motion to Dismiss is granted with respect to the section 1983 claim. Rhodes may replead this claim only if there is a basis to allege that defendants' actions are fairly attributable to a state or local government or agency or that the defendants were in a conspiracy with state actors.

## 3. Section 1981 Claim

Rhodes' first Motion to Amend makes reference to 42 U.S.C. § 1981, and her second Motion to Amend makes reference to the Civil Rights Act of 1866, which included the original version of section 1981. Unlike section 1983, section 1981 permits an action alleging discriminatory conduct against wholly private persons and organizations. *See* 42 U.S.C. § 1981(c); *Runyan v. McCrary,* 427 U.S. 160, 170–71 (1976). Section 1981 prohibits racial discrimination in the making and enforcement of contracts and in access to legal proceedings:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

42 U.S.C. § 1981(a). The right to "make and enforce contracts" includes the right to the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

The Complaint does not allege sufficient facts to support a claim under section 1981. Although Rhodes has alleged some sort of interference with her relationship with her mortgage lender, she has not provided sufficient factual allegations to set forth a plausible claim under section 1981. The Complaint alleges that "Advanced Property Management approached my mortgage lender directly on a number of different occasions requesting unpaid condo fees for which I was responsible [and] which my lender paid ... without my knowledge." Complaint at 8. It further alleges that this "forc[ed] me into a foreclosure proceeding, and ... badly damag[ed] the relationship with my lender because of the number of times they had given then payments." Id. "All of which [Rhodes] believes was racially motivated." Id. at 9.

 *6  It is not clear why it would have been wrongful for either of the defendants to approach her mortgage lender, or how doing so led to the foreclosure proceedings. If, on the one hand, Rhodes' mortgage lender maintains an escrow account to pay association fees on her behalf, then it is not clear how it would be wrongful for the defendants to seek payment of any association fees that were due, unless perhaps the defendants demanded immediate payment of her fees while permitting greater flexibility and delinquency with respect to the fees of white condominium owners. If, on the other hand, Rhodes' mortgage lender does not bear any responsibility for paying her fees, then it seems both odd and unlikely that defendants would have had reason to contact her mortgage lender or would have sought payment from the mortgage lender or that the mortgage lender would have acceded to this demand. In either case, Rhodes has not pled sufficient facts to make out a plausible claim that defendants have interfered with her contractual relationship with her mortgage lender because of her race. [6]

[6]    Rhodes does not allege any interference with a contractual relationship between her and the defendants. Although Rhodes may have a contractual relationship with one or both of the defendants, Rhodes has not identified any such contract and has not identified how defendants' actions relate to the terms of such a contract.

Defendants' Motion to Dismiss is granted with respect to her section 1981 claim. If Rhodes wishes to replead this claim, she must file an amended complaint setting forth a more detailed factual basis for concluding that defendants have wrongfully interfered with a contractual relationship because of her race. [7]

[7]    Because the court permits Rhodes to replead this claim, the court will address defendants' argument that any section 1981 should be dismissed for failure to exhaust remedies. Section 1981 does not contain a statutory exhaustion requirement. See Tomka v. Seiler Corp., 66 F.3d 1295, 1316 (2d Cir.1995) ("Unlike a Title VII plaintiff, for example, a § 1981 claimant need not exhaust EEOC remedies ...."). Defendants cite Williams v. Interstate Motor Freight Systems, for the proposition that section 1981 claims are subject to a judicially-created requirement of exhaustion of state or local remedies. 458 F.Supp. 20, 25 (S.D.N.Y.1978). The Williams case cites two cases for this proposition, only one of which involved a section 1981 claim. See Gonzalez v. Shanker, 533 F.2d 832, 833 n. 2 (2d Cir.1976) (listing the causes of action to include sections 1981 and 1983); Fuentes v. Roher, 519 F.2d 379, 386 & n. 4 (2d Cir.1975) (discussing exhaustion with respect to a section 1983 claim). In both cases, the Second Circuit expressed "some hesitation" about whether any exhaustion requirement should apply, and both held that the requirement did not bar the claims at issue because there were questions about the adequacy of the administrative remedies. See Gonzalez, 533 F.2d at 833–34, 838; Fuentes, 519 F.2d at 386–87. In Gonzalez, the Second Circuit held that "before a district court may relinquish its civil rights jurisdiction, it must ... be positively assured—it may not presume —that there are speedy, sufficient and readily available administrative remedies remaining open to pursue...." 533 F.2d at 834 (quotation omitted). It is not clear to this court whether these cases reflect the current state of the law on this issue. It is also not clear whether these cases would support dismissal for failure to exhaust in this case. See Complaint at 9 (alleging inadequacies of the state administrative process). Therefore, if Rhodes wishes to replead a section 1981 claim, and if defendants wish to pursue this argument, further

2011 WL 2076497

briefing would be required to support defendants' position.

### 4. Section 1982 Claim

Rhodes' first Motion to Amend also makes reference to 42 U.S.C. § 1982, which was also adopted as part of the Civil Rights Act of 1866. Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Like section 1981, section 1982 also permits actions to address discrimination by private parties. See Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413 (1968).

One pertinent question is whether section 1982 extends to claims, like the present one, for racially discriminatory actions in the provision of maintenance or compensation for damages to housing. The Supreme Court has noted that, "in sharp contrast to the Fair Housing Act," section 1982 "is not a comprehensive open housing law," and "[i]t does not deal specifically with discrimination in the provision of services or facilities in connection with the sale or rental of a dwelling." Jones, 392 U.S. at 413. However, the Supreme Court did not foreclose the question of whether section 1982 could, in some cases, be applied to "services or facilities" related to property. Id. at 413–14 n. 10 ("In noting that 42 U.S.C. § 1982 differs from the Civil Rights Act of 1968 in not dealing explicitly and exhaustively with such matters ... we intimate no view upon the question whether ancillary services or facilities of this sort might in some situations constitute 'property' as that term is employed in § 1982.").

*7 Based on the lack of precedent and the availability of other remedies, such as an FHA claim, this court has previously declined to extend section 1982 to claims of racial discrimination in the maintenance of housing facilities. See Green v. Konover Residential Corp., 3:95–cv–1984 (GLG), 1997 WL 736528, *12 (D.Conn. Nov. 24, 1997). The court is not aware of any reason to take a different approach now. Therefore, Rhodes may not assert a section 1982 claim based upon the allegations of disparate treatment in the remediation of damages from the sewage back-ups.

To the extent that Rhodes alleges that the defendants interfered with her relationship with her mortgage lender and forced her into foreclosure, she may have a claim that is within the scope of section 1982. Causing foreclosure on a person's home mortgage certainly impacts that person's right

to "purchase" or "hold" property. See 42 U.S.C. § 1982. However, any such claim must be dismissed for the reasons discussed in connection with the section 1981 claim. See supra at 9–11. If Rhodes wishes to replead such a claim, she must file an amended complaint setting forth specific factual allegations explaining and supporting her view that the defendants' wrongfully caused her mortgage to go into foreclosure because of her race.

### 5. Insurance Fraud Claim

Defendants note that Rhodes claims to have been the "victim of insurance fraud." Complaint at 7; Def. Mem. at 9–10. This claim appears amidst the allegations that the defendants received payment on insurance claims, but did not use the proceeds to Rhodes' benefit. As defendants note, "insurance fraud" can refer to a crime defined by the Connecticut penal code, and the victims of this kind of insurance fraud are insurance companies. See Conn. Gen.Stat. § 53a–215 (requiring "intent to injure, defraud or deceive any insurance company"). Rhodes is not an insurance company, and could not sue for fraud committed against an insurance company under this criminal statute. Alternatively, "insurance fraud" might be taken to suggest a claim under Connecticut's Unfair Insurance Practices Act (CUIPA), which prohibits insurers from engaging in unfair or deceptive practices. See Conn. Gen.Stat. §§ 38a–815, et seq. But the Complaint provides no indication that any unfair, deceptive, or fraudulent act was committed by an insurer. Indeed, no insurer is a defendant.

It is possible that, in using the term "insurance fraud," Rhodes simply meant to allege unfair or unjust activity involving the proceeds of an insurance claim. Rhodes has alleged that defendants received insurance money specifically based on the damages to Rhodes' condominium, but kept that money rather than using it to provide repairs or compensation to Rhodes. Complaint at 8 (alleging that defendants had "received Insurance Claims money on behalf of the sewage back up claim in my home and had kept the monies") (emphasis added). Although these allegations do not state a claim for insurance fraud per se, they suggest that Rhodes may have a claim under a broader cause of action, such as unjust enrichment. See Culver v. Culver, 127 Conn.App. 236, 248–49 (2011). Such a claim need not be based upon allegations of racial discrimination, but could instead have merit if defendants received money specifically based upon damages suffered by Rhodes and did not use that money to benefit Rhodes. Accordingly, defendants' Motion to Dismiss is granted with respect to any insurance fraud claim. However, Rhodes is granted leave to plead under a more suitable theory,

2011 WL 2076497

such as unjust enrichment claim, if she so chooses, and to plead more facts which would make it plausible that she has a cause of action based on the defendants' use of insurance payments.

## IV. CONCLUSION

 **\*8** Plaintiff's Motions to Amend (Doc. Nos.36, 37) are **GRANTED.** Defendants' Second Motion to Dismiss (Doc. No. 43) is **GRANTED IN PART** and **DENIED IN PART.** Defendants' Motion is denied with respect to plaintiff's claim under the Fair Housing Act. It is granted with respect to

claims under 42 U.S.C. §§ 1981, 1982, and 1983, and with respect to any claim for insurance fraud. Plaintiff is directed to file an amended complaint within 30 days of this Ruling, incorporating her allegation of a violation of the Fair Housing Act, 42 U.S.C. § 3604, and, if she chooses, repleading the dismissed claims as directed above.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2076497

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5706451
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Gregory BROOKS, Plaintiff,

v.

The DOE FUND, INC., James Washington,
and Terry Cooper, Defendants.

17-CV-3626 (PKC) (LB)
|
Signed 09/24/2020

**Attorneys and Law Firms**

Alexander G. Cabeceiras, Derek T. Smith, Derek T. Smith
Law Group, PC, New York, NY, Kelly L. O'Connell, The
Cochran Firm Treasure Coast, Stuart, FL, for Plaintiff.

Lori Diane Bauer, Steven Joshua Seidenfeld, Jackson Lewis,
LLP, New York, NY, for Defendants The Doe Fund, Inc.,
James Washington.

Bradley J. Bartolomeo, Brian Pete, Peter T. Shapiro, Lewis
Brisbois Bisgaard & Smith LLP, New York, NY, for
Defendant Terry Cooper.

**MEMORANDUM & ORDER**

PAMELA K. CHEN, United States District Judge:

 **\*1** Plaintiff Gregory Brooks brought this action against
Defendants The Doe Fund, Inc. ("TDF"), James Washington,
and Terry Cooper, asserting various federal and state law
claims of discrimination arising out of his time both receiving
services from and working at TDF. On March 31, 2020,
this Court issued a Memorandum & Order granting in part
Defendants' motion for summary judgment and dismissing
the federal claims with prejudice, while declining to exercise
supplemental jurisdiction over the state law claims. (Mar.
31, 2020 Memorandum & Order ("March M&O"), Dkt.
84.) Before the Court is Plaintiff's motion, filed *pro se* on
June 2, 2020, for reconsideration of the March M&O.[1]
(Plaintiff's Letter Motion ("Pl.'s Letter Motion"), Dkt. 88.)
For the reasons stated below, the Court denies the motion for
reconsideration.

[1]    Plaintiff has also filed a letter requesting that
the Court excuse any delay in filing his motion
for reconsideration, and seeking to supplement
his EEOC complaint. (Dkts. 90, 93.) The Court
considers these filings together with the motion for
reconsideration.

**DISCUSSION**[2]

[2]    The Court presumes the parties' familiarity with
the factual allegations and procedural history of
this case, which are set forth in detail in the March
M&O. (March M&O, Dkt. 84.) The Court also
adopts and incorporates herein the abbreviations
and definitions used in the March M&O.

**I. Status of Plaintiff's Representation**
Prior to this motion, Plaintiff was represented by counsel
at all times during this action. Yet, Plaintiff submits this
motion for reconsideration *pro se.* While "it is 'well-settled
in this circuit that a party may not proceed in federal courts
represented by counsel and simultaneously appear pro se,'
" *City of New York v. Venkataram*, No. 06-CV-6578 (NRB),
2009 WL 3321278, at \*1 n.1 (S.D.N.Y. Oct. 7, 2009) (citation
omitted), *aff'd*, 396 F. App'x 722 (2d Cir. 2010), "[p]ermitting
such hybrid representation—in which a party is 'represented
by counsel from time to time, but may slip into pro se mode for
selected presentations'—is within the Court's discretion[,]"
*Doe by & Through Doe v. E. Lyme Bd. of Educ.*, No. 11-
CV-291 (JBA), 2019 WL 245461, at \*1 (D. Conn. Jan. 17,
2019) (quoting *United States v. Rivernider*, 828 F.3d 91, 108
(2d Cir. 2016)). Plaintiff's counsel, Kelly L. O'Connell, still
appears as Plaintiff's attorney of record in this matter on
the ECF docket sheet and, to date, has not submitted a request
to withdraw as counsel. Yet, in seeking reconsideration *pro
se*, Plaintiff claims that O'Connell no longer represents him
and that Plaintiff intends to find a new attorney. (Pl.'s Letter
Motion, Dkt. 88, at 29.) Given that Ms. O'Connell has not
appeared on Plaintiff's behalf since the motion was filed,
despite two court orders directing Ms. O'Connell to file proof
of mailing of the Court's orders to Plaintiff, and Plaintiff's
assertion that he is currently unrepresented, the Court accepts
and considers Plaintiff's *pro se* submission. *See Venkataram*,
2009 WL 3321278, at \*1 n.1 (considering plaintiff's *pro se*
submission, even though plaintiff's attorney of record had not
requested to withdraw).

**\*2** "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citation omitted). However, as discussed, Plaintiff was represented at all times prior to this motion, including when the complaint was filed and when the motion for summary judgment was briefed. Because those submissions were drafted by an attorney, they are "not entitled to the generous latitude given to pro se complaints." [3] *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 205 (E.D.N.Y. 2017). However, the Court will liberally construe the instant *pro se* motion for reconsideration filed by Plaintiff.

[3]    Plaintiff asserts that the Court should construe his prior counseled pleadings liberally, arguing that "[i]f [the Court] found it odd that the Plaintiff was complaining about sexual harassment but [Plaintiff's] counsel did not file sexual harassment [claims], [the Court] did have an obligation to construe his pleadings liberally." (Pl.'s Letter Motion, Dkt. 88, at 27.) Plaintiff also argues that the Court, upon realizing that Plaintiff had not asserted a Title VII sex discrimination claim, should have "petitioned Plaintiff into court to inform Plaintiff of this oddity, so Plaintiff could have sworn knowledge and consent." (*Id.*) However, Plaintiff was represented by retained counsel and the Court therefore was not obligated to accord him the same protections afforded to *pro se* litigants. *Cf. Triestman*, 470 F.3d at 475 ("[I]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." (citation omitted)).

## II. Timeliness of Plaintiff's Motion

Based on the arguments Plaintiff's motion raises, it could be regarded as a Rule 59(e) motion, which does not limit the grounds for reconsideration. *See* Fed. R. Civ. P. 59(e). However, a Rule 59(e) motion must be filed no later than twenty-eight days after the entry of judgment. *See id.* Here, the judgment was entered on March 31, 2020 (*see* Clerk's Judgment, Dkt. 85) and Plaintiff's letter motion was postmarked May 26, 2020, *i.e.*, beyond the 28-day time limit (Pl.'s Letter Motion, Dkt. 88, at 35). Because the Court does not have the authority to extend the time to file a Rule 59(e) motion for reconsideration, *see* Fed. R. Civ. P. 6(b)(2), the

Court considers Plaintiff's motion under Rule 60(b), which allows reconsideration "within a reasonable time." *See Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010) ("An untimely [Rule 59(e)] motion for reconsideration is treated as a Rule 60(b) motion." (citation omitted)); *see* Fed. R. Civ. P. 60(c). [4]

[4]    Plaintiff requests more time for him to prepare a second motion for reconsideration with a new attorney. (Pl.'s Letter Motion, Dkt. 88, at 29.) To the extent Plaintiff intends to file a second motion for reconsideration, the Court reminds him of the relevant rule: "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). As with Rule 59(e) motions, the Court does not have the authority to extend the one-year deadline for Rule 60(b) motions. *See* Fed. R. Civ. P. 6(b)(2).

## III. Plaintiff's Rule 60(b) Motion

"Rule 60(b) provides for relief from judgment on any of several grounds specified in five numbered subparts, *see* Fed. R. Civ. P. 60(b)(1)–(5), and under a sixth, catch-all provision allowing for relief for 'any other reason,' Fed. R. Civ. P. 60(b)(6)." *Empresa Cubana Del Tabaco v. Gen. Cigar Co. Inc.*, 385 F. App'x 29, 31 (2d Cir. 2010) (summary order). "Rule 60(b) provides a mechanism for extraordinary judicial relief available only if the moving party demonstrates exceptional circumstances, and relief under the rule is discretionary." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (internal quotation marks, alteration, and citations omitted). "Rule 60(b) will be broadly construed to do substantial justice, while respecting that final judgments should not be lightly reopened." *Thai-Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 183 (2d Cir. 2017) (internal quotation marks and citation omitted). In fact, "[r]elief under Rule 60(b) is 'generally not favored and is properly granted only upon a showing of exceptional circumstances.' " *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010) (citation omitted).

**\*3** "[I]n applying for relief under Rule 60(b), the movant must present highly convincing evidence, show good cause for the failure to act sooner, and show that 'no undue hardship [would] be imposed on other parties.' " *Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35, 40 (2d Cir. 2020) (summary order) (internal quotation marks and citation omitted). "[A]

pro se litigant is not excused from the requirement of producing highly convincing evidence to support a Rule 60(b) motion." *Spaulding v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 143, 149 (E.D.N.Y. 2017) (citation omitted).

Because Plaintiff does not argue reconsideration is warranted because of newly discovered evidence, fraud, misrepresentation, or misconduct by an opposing party,[5] the judgment being void, or the judgment having been satisfied, released, or discharged, the Court examines Plaintiff's motion under Rule 60(b)(1) and (6).

[5] Plaintiff argues that his counsel's failure to assert a Title VII sex discrimination claim raises suspicions of collusion between Plaintiff's counsel and Defendants, and requests that "email communications from attorney to client be inspected," and that all payments, "known and unknown to Plaintiff and [the Court,] ... from Defendant to attorney[ ]s Derrick Smith and Kelly O'Connell and Marwan Porter or any affiliates or parties" be discovered. (Pl.'s Letter Motion, Dkt. 88, at 27.) The Court finds that such an accusation of unethical or fraudulent conduct by attorneys without support does not warrant relief under Rule 60(b)(3). *See Spaulding*, 407 F. Supp. 3d at 150 ("Unsupported allegations without evidence are insufficient to justify relief under Rule 60(b)(3)." (citations omitted)).

**A. Rule 60(b)(1)**

Rule 60(b)(1) provides relief from judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

**1. Mistake of the Attorney**

"Relief from counsel's error is usually sought pursuant to Rule 60(b)(1) on the theory that such error constitutes mistake, inadvertence or excusable neglect." *Webb v. City of New York*, No. 08-CV-5145 (CBA) (JO), 2010 WL 3394537, at *3 (E.D.N.Y. Aug. 23, 2010) (internal quotation marks and citations omitted). However, "[a]n attorney's negligence does not [ ] provide grounds for relief under Rule 60(b)(1)." *Hill v. World Class Auto. Corp.*, No. 06-CV-2496 (SLT) (RLM), 2008 WL 4809445, at *3 (E.D.N.Y. Nov. 4, 2008) (citations omitted); *see also Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986) ("Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." (citations omitted)); *Webb*, 2010 WL 3394537, at *3 ("The Second Circuit ... has consistently declined to relieve a client under [Rule 60(b)(1)] of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the [l]atter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload." (citations omitted)). This is because "an attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary." *Nemaizer*, 793 F.2d at 62–63. "[A] person who selects counsel cannot thereafter avoid the consequences of the agent's acts or omissions." *Id.* at 62.

*\*4* Plaintiff argues that the failure to assert a Title VII sex discrimination claim was due to his counsel's mistake and he should not suffer the consequences because he was not aware of it. (Pl.'s Letter Motion, Dkt. 88, at 25–26.) Plaintiff states that he "was under the impression that a Title VII [sexual harassment claim] was filed with the [Court]" and "had no knowledge that [a] Title VII [sexual harassment claim] was not filed through [his] attorneys." (*Id.* at 1.) Plaintiff alleges that he "was not allowed to be present at court dates ... [or] for any communications between Defendant and Plaintiff counsel."[6] (*Id.* at 26.) Plaintiff additionally complains of "ineffective assistance of counsel" on the basis that Plaintiff "requested many things of [his] attorney that [he] never received[,]" that Plaintiff "did not receive responses to many [of his] inquiries, and [that] apparently [Plaintiff's] Attorney was not informing the [C]ourt[ ] properly through filing[,] although they were supplied with all information in a timely manner from Plaintiff." (*Id.* at 16, 26.) For support, Plaintiff provides various correspondence between Plaintiff and his counsel. (*Id.* at 16–24.)

[6] The Court interprets Plaintiff as arguing either or both that had he been present at any of the court proceedings, he would have realized that his counsel had failed to assert a Title VII sex discrimination claim on his behalf (and could have instructed his attorney to do so), and/or that his counsel deliberately kept him from attending the court proceedings in order to conceal this failure from Plaintiff. For the reasons previously discussed, the Court rejects the latter suggestion to

the extent that it is part of Plaintiff's unsupported collusion argument.

Plaintiff's complaints about the inadequacy of his counsel are unavailing. Despite Plaintiff's claim of ineffective assistance of counsel, "a lawyer's purported shortcomings present no cognizable ground for relief in a civil matter, where the Sixth Amendment right to counsel does not apply." *Singh v. Home Depot U.S.A., Inc.*, 580 F. App'x 24, 25 (2d Cir. 2014) (summary order). It is immaterial whether the failure to assert a Title VII sex discrimination claim was a deliberate choice of Plaintiff's counsel or a result of their negligence. Neither are grounds for Rule 60(b)(1) relief. *See Nemaizer*, 793 F.2d at 62; *Hill*, 2008 WL 4809445, at *3. Therefore, Plaintiff's misgivings about his counsel, or dissatisfaction with their representation, are insufficient to warrant relief under Rule 60(b)(1). "In circumstances such as these, plaintiff's recourse is limited to pursuing a negligence action against counsel." *Hill*, 2008 WL 4809445, at *4 (internal quotation marks, alteration, and citation omitted).

### 2. Mistake of the Court

"Rule 60(b)(1) is available for a district court to correct legal errors by the court," *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2009) (internal quotation marks and citations omitted), as well as "the district court's own mistake of fact," *Niederland v. Chase*, 425 F. App'x 10, 11 (2d Cir. 2011) (summary order) (citations omitted). However, "Rule 60(b)(1) motions ... based on district court mistakes are generally deemed untimely if made after the deadline for filing a notice of appeal[,]" which is within thirty days after the entry of judgment. *Id.* at 12 (citation omitted); *see* 28 U.S.C. § 2107(a). "One of the reasons for not permitting Rule 60(b)(1) motions to correct court errors after the deadline for appeal is to prevent the rule from becoming a vehicle to assert an otherwise time-barred appeal." *Niederland*, 425 F. App'x at 12 (citations omitted).

Plaintiff expends significant effort to explain and provide color for certain facts noted in the Court's March M&O. To the extent that Plaintiff seeks reconsideration on the basis of any factual or legal errors by the Court, Plaintiff's motion is time-barred because it was filed beyond the deadline for filing an appeal. In addition, "it is well established that a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided[,]" *id.* (internal quotation marks and citation omitted), which is plainly the case here.

**\*5** Plaintiff's arguments are unavailing on the merits as well. Plaintiff disputes the Court's finding that none of Plaintiff's alleged retaliatory actions were adverse employment actions for purposes of a Title VII retaliation claim. [7] Plaintiff largely repeats his allegations that he was given the run-around about his route assignment and, on one occasion, forced to stand on the corner to wait for a new assignment, which he "believes ... was a means to frustrate and discourage Plaintiff from working and deny work hours." (Pl.'s Letter Motion, Dkt. 88, at 8, 10–11.) Plaintiff also asserts that "he was confronted in a hostile manner, intimidated, threatened and told to sit in a corner, threatened to be kicked out of the program and threatened [with being] ... falsely arrested by the police"; that a TDF employee intentionally disrupted his sleep; and that Plaintiff was given the "runaround" about his housing voucher. (*Id.* at 9–10, 13–14.) However, the Court did not overlook these allegations in granting summary judgment for Defendants, and has ruled that these difficulties, which Plaintiff encountered both during and after his purported employment at TDF, were insufficient to state an adverse employment action. (March M&O, Dkt. 84, at 21–28.) Other than Plaintiff's subjective belief, Plaintiff does not provide any reason for why the Court's determination was erroneous.

[7]     Plaintiff also alleges that he was subject to "threats of physical violence and intimidation." (Pl.'s Letter Motion, Dkt. 88, at 8.) Plaintiff does not say specifically by whom. But, assuming that Plaintiff is alleging that the defendants in this action were the perpetrators, the Court disregards this allegation, which is being made for the first time, because it does not constitute newly discovered evidence under Rule 60(b)(2), as Plaintiff could have made this allegation before. To the extent that Plaintiff is arguing that Defendant Cooper's statement to Plaintiff, "You say, this mother fucker[,]" was a threat of physical violence and intimidation and that Defendant TDF intentionally arranged for Plaintiff and Defendant Cooper to be in the same place at the same time as part of a campaign to threaten or intimidate Plaintiff (*id.* at 8–9), the Court found in the March M&O that these allegations are insufficient to state an adverse employment action. (March M&O, Dkt. 84, at 25–26.) Plaintiff does not now provide any justification for finding otherwise.

Similarly, in several paragraphs of his motion, Plaintiff details his experience at the TDF under the

Case 5:22-cv-00432-DNH-ATB    Document 25    Filed 11/04/22    Page 33 of 37

heading, "Previous complaint made by Plaintiff," and adds new allegations that were not previously presented to the Court. (Pl.'s Letter Motion, Dkt. 88 at 10–11.) For instance, Plaintiff alleges that Wiggins cautioned Plaintiff that "either you are going to do the program the way it is or you leave." (*Id.* at 10.) Based on the Court's review of the record, Plaintiff did not testify to this comment during his deposition and did not rely on it in his opposition to the motion for summary judgment. Because these allegations were not, but could have been, asserted previously, they do not constitute newly discovered evidence under Rule 60(b)(2), and the Court declines to consider them.

Plaintiff argues that being subject to false write-ups was sufficient to state an employment adverse action for retaliation claims (Pl.'s Letter Motion, Dkt. 88, at 9–10)—a claim that the Court has already considered and rejected (March M&O, Dkt. 84, at 24). In seeking reconsideration of that ruling, Plaintiff offers only an incomplete and unattributed quote: "The law states 'if an employee reported safety violations at work, was injured, attempted to join a union, or reported regulatory violations by management, and management['s] response was to harass and pressure the employee to quit by imposing unwarranted discipline ...' " (*Id.* at 9 (ellipsis in original).) [8] Even assuming the validity of the principle that Plaintiff appears to be relying upon, *i.e.*, that unwarranted discipline imposed on an employee for engaging in protected activities, such as reporting safety or regulatory violations or joining unions, may constitute Title VII retaliation, it does not provide a basis for the Court to reconsider its prior ruling, because, as the Court previously found, Plaintiff has failed to put forth sufficient evidence upon which a reasonable jury could find that he had been subjected discipline that was "of such a serious or consequential nature to dissuade a reasonable worker from making or supporting a charge of discrimination." (March M&O, Dkt. 84, at 24 (internal quotation marks, alteration, and citation omitted).) Therefore, Plaintiff has not shown that the Court misapplied the law. [9]

---

[8]    The Court is unable to determine the source of this quote either through a search of Westlaw or the Court's March M&O.

[9]    Plaintiff also disputes parts of the Court's summary of his sexual harassment allegations in the March M&O. Plaintiff explains that he did not report

a certain sexual harassment incident, because "Plaintiff did not know how to report such an incident at that point." (Pl.'s Letter Motion, Dkt. 88, at 1.) Plaintiff also disputes that during another incident, the purpose of his conversation with Defendant Cooper was not to discuss "his route assignment," as described in the March M&O, but to record Defendant Cooper in an attempt to get incriminating evidence. (*Id.* at 2.) These contentions seem to suggest that the Court did not find Plaintiff's story credible. However, the Court did not make any determination with respect to Plaintiff's credibility and at no point in its decision faulted Plaintiff's failure to report or his contact with Defendant Cooper. These facts are irrelevant to the initial question of whether Plaintiff asserted a Title VII sex discrimination claim and do not provide grounds for reconsideration.

**\*6**  Accordingly, Plaintiff's motion is denied under Rule 60(b)(1).

### B. Rule 60(b)(6)

"Rule 60(b)(6) authorizes a district court to grant relief to a moving party for any [other reason] that justifies relief. It is a grand reservoir of equitable power to do justice in a particular case." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation marks and citation omitted). "Relief [under Rule 60(b)(6)] is warranted where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." *United Airlines, Inc.*, 588 F.3d at 176 (internal quotation marks and citation omitted).

"Where a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed." *Stevens*, 676 F.3d at 67–68 (citation omitted); *id.* at 67 ("Rule 60(b)(1) and Rule 60(b)(6) are mutually exclusive, such that any conduct which generally falls under the former cannot stand as a ground for relief under the latter." (internal quotation marks and citations omitted)). "In typical civil proceedings, this Court very rarely grants relief under Rule 60(b)(6) for cases of alleged attorney failure or misconduct. The rationale for this principle was best expressed by Justice Harlan in *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)." *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004) (first citation omitted). There, Justice Harlan explained that:

> [t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Id.* (quoting *Link*, 370 U.S. at 633–34). "To be 'extraordinary circumstances' for purposes of Rule 60(b)(6), a lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance or constructive disappearance." *Id.* (citations omitted).

Plaintiff requests that the Court "reconsider its decision in the interest of justice." (Pl.'s Letter Motion, Dkt. 88, at 26.) Plaintiff argues that, in effect, he

> represents hundreds of men that ha[ve] been sexually harassed or assaulted by Defendant Cooper. [10] Plaintiff was the only one of the men to summon the courage to speak out and expose the hidden crimes of the Doe Fund. To deny Plaintiff justice because an attorney may have forgot[ten] to technically declare [Title VII] sexual harassment, and to ignore all of the additional evidence recordings, documents, files etc. complaining of sexual harassment along with the mountains of evidence provided by the Plaintiff himself, would be a grave

error of the [Court]. It would not only deny proper justice to Plaintiff, but also to the hundreds of other victims that Plaintiff represents as well as the community.

**\*7** *Id.* While the Court is sympathetic to the injustice Plaintiff claims, his allegations of attorney misconduct and inadequacy are insufficient to warrant Rule 60(b)(6) relief. Plaintiff does not allege that his counsel abandoned the case altogether and, in fact, Plaintiff's counsel prepared Plaintiff's opposition to Defendants' motions for summary judgment. To the extent that Plaintiff alleges gross negligence, the Second Circuit has "consistently" resisted granting Rule 60(b)(6) relief for the gross negligence of a party's lawyer. *Stefanopoulos v. City of New York*, 299 F. App'x 49, 50 (2d Cir. 2008) (summary order) (collecting cases). In addition, Plaintiff is not entirely without recourse, as his state law claims asserting sex discrimination were dismissed without prejudice to refile in state court. Therefore, Plaintiff has not shown extraordinary circumstances warranting Rule 60(b)(6) relief.

10    Plaintiff did not assert any class action claims. (*See generally* Complaint, Dkt. 1.)

## IV. Plaintiff's Motion to Amend

Liberally construed, Plaintiff's motion could be considered as a motion to amend under Rule 15(a), seeking to add various claims of sexual harassment, hostile work environment, and discrimination on the basis of conviction status and gender discrimination under Title VII. (Pl.'s Letter Motion, Dkt. 88, at 15.)

The Second Circuit has held that "[o]nce judgment is entered[,] the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Janese v. Fay*, 692 F.3d 221, 229 (2d Cir. 2012) (citation omitted); *see Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("A party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." (citation omitted)). "[T]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Janese*, 692 F.3d at 229 (citations omitted). "[H]owever, [ ] considerations of finality

do not always foreclose the possibility of amendment, even when leave to replead is not sought until after the entry of judgment." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011). "[I]t might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Id.* (citations omitted). However, "[w]hen the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly." *Ruotolo,* 514 F.3d at 192 (citation omitted).

"A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted). "Where a party seeks leave to amend after a period of delay, the burden is on the party who wishes to amend to provide a satisfactory explanation for the delay, and the court is free to conclude that ignorance of the law is an unsatisfactory excuse." *Morency v. NYU Hosps. Ctr.*, 728 F. App'x 75, 76 (2d Cir. 2018) (summary order) (internal quotation marks, alterations, and citation omitted). "Prejudice may be found, for example, when the amendment is sought after discovery has been closed." *N.H. Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 123 (S.D.N.Y. 2009); *see Scott v. N.Y.C. Dep't of Corr.*, 445 F. App'x 389, 391 (2d Cir. 2011) (summary order) (affirming denial of motion to amend and finding of prejudice, where defendants "had already deposed [plaintiff], otherwise completed discovery, and moved for summary judgment, and [plaintiff's] original complaint could not fairly be read to assert a claim for gender discrimination based on unequal terms and conditions of employment").

**\*8** Here, the Court has concluded that Plaintiff is not entitled to relief under Rule 60(b), which would in most cases foreclose Plaintiff's motion to amend his complaint. Even taking into account the nature of a potential motion to amend the complaint in this case, the Court finds that it should still be denied, considering that before the entry of judgment, the case had been ongoing for almost three years, discovery had long closed, and the motions for summary judgment had been fully briefed. *See McCarthy*, 482 F.3d at 202 (affirming denial of motion to amend and finding inordinate delay, where "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint"). Plaintiff did not once seek to amend during this inordinate delay, even though Plaintiff or his counsel knew or should have known of the basis for the

amendment. *See Frenkel v. N.Y.C. Off-Track Betting Corp.*, 611 F. Supp. 2d 391, 394 (S.D.N.Y. 2009) ("[T]he Court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." (internal quotation marks and citation omitted)), *opinion adopted*, 701 F. Supp. 2d 544 (S.D.N.Y. 2010).

Plaintiff argues that Defendant TDF had been on notice about Plaintiff's sexual harassment claim, because he had complained to Defendant TDF following the incident with Defendant Cooper, and would not be harmed by the amendment. [11] (Pl.'s Letter Motion, Dkt. 88, at 25.) However, Defendants have also presumably relied on the Complaint filed in this action and proceeded accordingly during discovery and the summary judgment stage. By Plaintiff's own admission and request, additional discovery would be needed. (*See id.* at 16 ("Plaintiff has a right to interview and request an investigation of other employees that ha[ve] been [s]upervised by Defendant Cooper"); *id.* at 22 ("Plaintiff request[s] that the court demand that all filings and request for information [be] reset.... Plaintiff ask that courts intervene and force Defense to produce.").) For this reason, and because the resolution of the dispute would be significantly delayed, the proposed amendment would be prejudicial to Defendants. *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (finding prejudice would result if a new claim would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute" (citation omitted)).

---

[11]    Plaintiff also argues that "Defendant TDF is not unfairly prejudiced by any addition to Title VII," because "Defendant['s] participation in crime makes the Defendant the aggressor" and "Defendant has possibly broken multiple federal and state laws by withholding and destroying evidence from a crime." (Pl.'s Letter Motion, Dkt. 88, at 27–28.) However, whether Defendants are civilly or criminally liable is largely irrelevant to the procedural question of whether a motion to amend should be granted under Rule 15(a), where judgment has already issued and the movant knew or should have known of the same alleged liability when the original complaint was filed and before the case has been fully litigated.

The only reason Plaintiff has provided for the inordinate delay is the negligence of his counsel and his own ignorance of the law. However, granting the proposed amendment would allow Plaintiff to "avoid the consequence of [his counsel's] acts [and] omissions." *Nemaizer*, 793 F.2d at 62. Plaintiff's explanation for the inordinate delay does not satisfy the more exacting standard for amending the complaint after the entry of judgment. *See Scott v. City of N.Y. Dep't of Corr.*, No. 04-CV-9638 (SHS) (GWG), 2007 WL 4178405, at *4 (S.D.N.Y. Nov. 26, 2007) (finding attorney misconduct did not support a finding of good cause); *Lastra v. Weil, Gotshal & Manges LLP*, No. 03-CV-8756 (RJH) (RLE), 2005 WL 551996, at *4 (S.D.N.Y. Mar. 8, 2005) ("Claims by a litigant that he should be excused from his attorney's actions because of alleged fraudulent conduct and disobeyance of the litigant's orders may give rise to a claim for malpractice, but does not constitute an extraordinary circumstance or excusable neglect."); *Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99-CV-9307 (JFK), 2001 WL 725291, at *2 (S.D.N.Y. June 27, 2001) ("[T]he failure of an attorney to recognize a potential cause of action is not a sufficient justification for granting leave to amend a complaint.").

**\*9** Accordingly, to the extent that Plaintiff seeks to add new claims to his complaint, the motion to amend is denied.

## V. Plaintiff's Other Contentions

Plaintiff makes several additional arguments and requests that are largely irrelevant to the Rule 60 analysis. The Court finds them to be unpersuasive.

First, in addition to seeking to add new claims, Plaintiff asserts that he has asserted a Title VII sex discrimination all along, because "Plaintiff commenced this action of sexual harassment the moment Plaintiff was touched." (Pl.'s Letter Motion, Dkt. 88, at 15.) However, this is an inaccurate understanding of civil procedure, as "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. Plaintiff also argues that the Court should take into consideration a complaint that was ostensibly dated July 21, 2016, but was never filed with the Court.[12] (Pl.'s Letter Motion, Dkt. 88 at 3–4.) Plaintiff explains that this complaint was "written by Plaintiff on the day of the assault" and "in [ ] Plaintiff['s] own words" and that "Plaintiff presented [the] attorney with copies of [the] original complaint, which was also filed with the Doe Fund." (*Id.* at 15, 25.) "Plaintiff request[s] that the [Court] [ ] take some action to rectify this technical error of filing and use [the] original complaint as a

Title VII [complaint] as it was written before the limit and in the words of the Plaintiff himself under penalty of perjury, not counsel." (*Id.* at 27.) However, despite Plaintiff's claim that "the [Court] ha[s] records of [this] original complaint" (*id.* at 25), it was never made part of the record. In contrast, the complaint that is in the record does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief" for sex discrimination under Title VII. *See* Fed. R. Civ. P. 8(a)(2). Therefore, the fact that Plaintiff complained to Defendant TDF about being discriminated against on the basis of his sex before he initiated this action does not cure the deficiency in his pleadings.[13]

[12]   This action was commenced on June 15, 2017. (*See* Complaint, Dkt. 1.)

[13]   Because the Court has found that Plaintiff did not assert a Title VII sex discrimination claim, the Court does not discuss its underlying merits and does not consider Plaintiff's arguments that his allegations sufficiently stated sexual harassment and hostile work environment (*see* Pl.'s Letter Motion, Dkt. 88, at 2, 4 (arguing that Plaintiff's allegations were "no simple teasing, or offhand comment, or isolated incident")), or that Defendant TDF is liable for condoning Defendant Cooper's actions (*see id.* at 5–7 (arguing that "[t]he Doe Fund was knowledgeable [sic] and therefore responsible and liable as they allowed the sexual assaults to continue daily prior to current claim"); *see also id.* at 30–32.)

Second, Plaintiff requests that this Court "launch a federal investigation into the years of sexual harassment and assault of this Supervisor Defendant Cooper and the Doe Fund," claiming that "[o]nce the federal courts were made aware of a statutory crime there should have been a federal investigation launched for fact finding and proper disciplinary measures should have followed." (Pl.'s Letter Motion, Dkt. 88, at 2.) Notwithstanding the fact that the alleged crime of sexual harassment probably does not fall under federal jurisdiction, the Court has limited authority to review prosecutorial decisions, much less the power to order a federal investigation or to compel prosecution. *See United States v. Avenatti*, 433 F. Supp. 3d 552, 561 (S.D.N.Y. 2020) ("This broad [prosecutorial] discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review.") (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)); *Houston v. Nassau County*, No. 08-CV-197 (JFB) (WDW), 2011 WL 477732, at *3 (E.D.N.Y. Feb. 2, 2011)

**Brooks v. Doe Fund, Inc., Slip Copy (2020)**

2020 WL 5706451

("[B]oth the Supreme Court and Second Circuit have made clear that the decision regarding whether or not to initiate prosecution is a quintessential prosecutorial function that is entitled to absolute immunity."). Generally, the Court's authority to request a criminal investigation—which does not, in any event, extend to ordering one—is limited to conduct that directly affects the judicial process or court proceedings, such as contempt of court. *See ACLI Gov't Sec., Inc. v. Rhoades*, 989 F. Supp. 462, 467–68 (S.D.N.Y. 1997) (discussing courts' ability to "request the appropriate prosecuting authority to prosecute contempt actions"), *aff'd*, 159 F.3d 1345 (2d Cir. 1998); *see also* Fed. R. Crim. P. 42(a)(2) ("The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt."). Therefore, the Court denies Plaintiff's request that the Court direct a federal criminal investigation into TDF or Defendant Cooper.

**\*10** Lastly, Plaintiff seeks the recusal of the undersigned and the transfer of this action to the District Court for the Southern District of New York on the basis of prejudice against Plaintiff. Plaintiff alleges that he "learned from Attorney O'Connell in a recorded discussion with attorney that Judge Pamela K Chen made bias[ed] comment against prisoners. Judge Chen exclaimed that Plaintiff was 'in prison so why is he complaining about sexual abuse? He should be used

to it.' " (Pl.'s Letter Motion, Dkt. 88, at 32.) While Plaintiff concedes that "[o]n phone discussion with Plaintiff Attorney O'Connell attempted to change her original statement that the Judge that made [the] comment was Judge Bloom and not Judge Chen," he still believes that the undersigned made the inappropriate comment. (*Id.*) This argument is wholly without merit. First, the comment cannot be attributed to the undersigned, because, as shown by the ECF docket, the undersigned has never held a conference or hearing with the parties. Second and setting aside the Court's rejection of any suggestion that the Honorable Lois Bloom made such a comment, Plaintiff's motion for recusal and transfer is moot because the case has been closed. *Whitnum v. Emons*, 767 F. App'x 195, 196 (2d Cir. 2019) (summary order) (deeming the motion for recusal moot, where the case had been closed).

### CONCLUSION

For the reasons stated above, the Court denies Plaintiff's motion for reconsideration.

SO ORDERED.

### All Citations

Slip Copy, 2020 WL 5706451

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.